209 So.2d 856

**R. B. POTTER**

**v.**

**STATE.**

**5 Div. 696.**

Court of Appeals of Alabama.

April 16, 1968.

Hooton & Hooton, Roanoke, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was convicted by the Circuit Court of Randolph County, Alabama, of manslaughter in the first degree and sentenced to a term of five years in the State penitentiary as punishment therefor. From this conviction and sentence, this appeal is made.

Chance Morris testified for the State that he knew deceased, Big Jim Allen; that he (the witness) was, on the night of April 2, 1967, living as a boarder in the home of Mamie Potter, wife of appellant; that Mamie Potter was separated from appellant at that time; that he (the witness) heard a car "coming to that house" and "heard some talking" from Mamie Potter's room; that he went to see who was talking; that he saw the deceased "setting on the side of the bed;" that he (the witness) got a chair and sat by the window so he could see the highway; that he saw a car approach and saw appellant break open his wife's latched door; and that appellant walked up to the deceased "and slapped him and that knife was open in his right hand." Morris testified further that appellant stab-

bed the deceased while the deceased tried to escape, and that he (appellant) "carried Big Jim on to the door," and returned, looked at him (the witness), and told him "the same thing goes for you."

On cross-examination, Morris testified that Mamie Potter told him not to let deceased into the house if he came but when he (the witness) woke up about midnight, the deceased was in the house. Morris also testified that appellant "was cutting him [the deceased] on his left side" and back.

Pete Brown testified on behalf of the State that he discovered the body of the deceased "about 5:00 o'clock" in the morning "laying there in the road," "about 3 or 4 hundred feet" from Mamie Potter's house; that he saw "a little blood around his waist part there;" and that he reported his discovery to the police.

On cross-examination, Brown stated that he found the body of deceased on "Double Head Highway," which highway was "pretty heavily traveled."

Officer DeVaughn Landers testified that he went with Brown to deceased's body and noticed some blood had dripped along the road "back toward" Mamie Potter's house.

James L. Brown, a licensed mortician and funeral director for nineteen years and owner of the East Roanoke Funeral Home in Roanoke, Alabama, testified that he had handled or prepared for burial "a thousand or more" bodies; that he had seen people who had met death by violence of various sorts; and that he handled the body of deceased and prepared it for burial. Brown testified more specifically as follows:

"Q. And did you see any wounds or injuries on that body?

"A. I did.

"Q. What type of wound and where were they?

"A. On the left side. Seemed like it was a stab or some sharp instrument

on the left side, and had a slight laceration on the right leg or the right knee or something like that. It could have been—I wouldn't say it was an instrument, but he had a bruise there."

Upon being recalled, Pete Brown testified that the deceased was dead when he found him and the blood had "congealed."

Officer Landers, when recalled, also testified that the deceased was dead when he found him.

Sheriff C. W. Thompson testified that he saw appellant "back across town" on the same day deceased's body was found and that he recovered a pocket knife off the highway as pointed out to him by appellant. The sheriff testified that he advised appellant of his right to remain silent; that anything appellant said might be used against him in a court of law; and that he told appellant he was entitled to an attorney; even if he could not afford to retain one. The sheriff also testified that he had no warrant for appellant and that appellant was not under arrest at that time. He stated that following appellant's directions, he and Officer Rice found the bloody knife and that appellant identified the knife as the one with which he "cut Allen."

After the State had rested, appellant moved to exclude the testimony because no corpus delicti was proven and moved to exclude the evidence because no cause of death was shown. Both of these motions were overruled and appellant excepted thereto.

■ Appellant claims as error the court's overruling of his motion to exclude the testimony, contending that no corpus delicti was proven.

The case of Cook v. State, 43 Ala.App. 304, 189 So.2d 595, states in part as follows:

"The burden was on the State to prove a causal connection between the injuries inflicted by the defendant and the death of deceased, but such fact may be estab-

lished by circumstances as well as by direct evidence. If there is any proof, direct or circumstantial, to establish the corpus delicti, the sufficiency of such proof is for the jury and not for the court. Gurley v. State, 36 Ala.App. 606, 61 So.2d 137."

In the case of McCall v. State, 262 Ala. 414, 79 So.2d 51, the Supreme Court of Alabama stated as follows:

"Here it was shown that the deceased was cut, that he received only one wound and that he died. Clearly there was ample evidence from which the jury could have found causal connection between the wound inflicted by the appellant and the death of the deceased. All the evidence concerning the death of the deceased tended to show that it was caused by the criminal agency of appellant and that it was not the result of accident or natural causes, or of suicide."

See also Gurley v. State, 36 Ala.App. 606, 61 So.2d 137; Phillips v. State, 248 Ala. 510, 28 So.2d 542; Green v. State, 263 Ala. 324, 82 So.2d 418; and Jones v. State, 260 Ala. 341, 70 So.2d 629. We feel that this claim of error is without merit.

Appellant also contends that the trial court committed error by allowing Sheriff Thompson to testify as to his conversation with appellant concerning discovery of appellant's knife. Appellant contends that he was thus prejudiced in the eyes of the jury as this constituted a confession without a proper predicate.

Pertaining to the laying of the predicate, the record states in part as follows:

"THE COURT: Qualify him if you can, Mr. Young.

"Q. Did you talk with him, with Potter?

"A. I did.

"Q. Did you advise him of his rights?

"A. I did.

"Q. Did you advise him he had a right to remain silent?

"A. I did.

"Q. Did you advise him that anything that was said might be used in court against him?

"A. I did.

"Q. Did you advise him he was entitled to an attorney?

"A. I did.

"Q. Did you advise him that if he did not have an attorney and wanted one that the State would appoint him one?

"A. I did.

"MR. ROBERT J. HOOTON: May I ask him a preliminary question, if the Court please? Did you have a warrant at that time for his arrest?

"THE WITNESS: I did not.

"MR. ROBERT J. HOOTON: Was he under arrest?

"THE WITNESS: No, sir, he was not.

"Q. What, if anything, did he tell you about a knife?

"MR. ROBERT J. HOOTON: If the Court please, we [object] on the ground that he hasn't been properly qualified.

"THE COURT: Overrule your objection.

"MR. ROBERT J. HOOTON: We reserve an exception."

 The record fails to reveal whether or not the witness or anyone else in the presence or hearing of appellant at the time of the alleged confession coerced him or committed violence on his person, offered him any inducement, promise of reward or hope of reward in an effort to get him to make a statement regarding the killing of the deceased.

The case of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, clearly establishes as a part of the full predicate for a confession the necessity of establishing by proof that no coercion, violence, threats, hope of reward or promise was used in an effort to obtain a confession. Failure to establish the full predicate is reversible error in this case, and, therefore, appellant's claim of error was proper and this "confession" should not have been allowed into evidence. See also Duncan v. State, 278 Ala. 145, 176 So.2d 840.

The judgment in this cause is, therefore, due to be reversed and the cause remanded.

Reversed and remanded.