283 So.2d 624

James **JOHNSON**, alias

v.

**STATE.**

**3 Div. 157.**

Court of Criminal Appeals of Alabama.

Sept. 25, 1973.

John D. Cates, Jr., Montgomery, for appellant.

William J. Baxley, Atty. Gen., and J. Victor Price, Jr., Asst. Atty. Gen., for the State.

HARALSON, Supernumerary Circuit Judge.

Appellant was convicted of a violation of § 174(a), Title 14, Code of Alabama, 1940, Recompiled 1958, and sentenced to imprisonment for two years in the penitentiary. Subsection (a) of § 174, supra, reads as follows:

> "No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his possession or under his control."

By stipulation between the appellant and the State it was admitted that appellant had heretofore been convicted of murder and served a part of his sentence of thirty years.

The testimony adduced by the State tends to show that on November 15, 1971, one Dean Shade of Montgomery, Alabama, was at the home of one of the women he stayed with. The appellant came by the lady's house because he owed her a dollar and wished to pay her. Upon seeing Shade there, the appellant asked if Shade had anything to drink. Shade did have some gin that he and his lady friend had been drinking all weekend and about one-half of a pint remained.

The appellant offered to pay a dollar for a drink, and Shade agreed to sell him one. Being a man who had something to drink everyday with a reputation of being a heavy drinker, Shade also poured himself the remainder of the gin.

After finishing his drink, the appellant got up to leave indicating that he would not come across with the promised dollar. Shade made a move to enforce his right to be paid, and the appellant pulled a shiny pistol out of his belt. Shade knocked the gun from his hand (the appellant had only one hand), then proceeded to cut the appellant on the face and arm with a knife and strike him about the head with a hammer.

The appellant finally left the presence of Shade thus giving Shade an opportunity to inspect the shiny pistol that had been abandoned by the appellant. Close inspection showed the "firearm" to be loaded with pa-

per caps. The gun in question was identified by Shade at the appellant's trial. Shade testified that the gun introduced looked like the one he had taken from the appellant, and that he (Shade) had himself possessed a "heap" of guns during his life.

The appellant did not long remain absent from the apartment housing Dean Shade. He returned within minutes, carrying in his one hand, a sawed-off shotgun. The appellant then proceeded to fire three times (re-loading after each shot) at Shade. Shade managed to get within reaching distance of the appellant, but appellant then fled into a nearby apartment carrying the sawed-off shotgun in his hand. Its barrel was measured at less than twelve inches.

A short time later the Montgomery City Police arrived and found the appellant sitting on his front porch. After making a brief investigation the police officer carried the appellant around to Shade's apartment. On the way to this apartment the appellant was fully advised of his rights. While in the apartment occupied by Shade, the appellant stated that the shiny pistol in question was his. The appellant was next asked about the sawed-off shotgun and denied ownership of this weapon even though his denial prompted Shade to make a direct threat on his life. However, the shotgun in question was found in the apartment into which the appellant had fled. Officer Wingard testified that the appellant was intoxicated but not drunk, and that he would not have arrested either the witness Shade or appellant for public drunkenness, although he could smell liquor on the breath of each.

Both the pistol and shotgun were introduced into evidence by the State over the objection of appellant. The pistol was identified as Exhibit 2 and the shotgun as Exhibit 3. The court admitted the statement of appellant to Officer Wingard as to his ownership of the pistol, but refused to admit any statement with regard to the shotgun.

The appellant testified that neither the pistol nor shotgun was his, and that Shade pulled a pistol during the altercation in the house between the appellant and Shade. He further testified that he and Shade had been drinking at the time.

Upon completion of the testimony, appellant made a motion to exclude the State's evidence, Exhibits 2 and 3, and the testimony of Officer Wingard. Appellant moved the court to grant a directed verdict because the corpus deliciti had not been proved, and there was insufficient evidence upon which to base a conviction. These motions were overruled by the court.

Appellant argues that the statement alleged to have been made by him to Officer Wingard that the pistol, Exhibit 2, belonged to him was erroneously admitted in evidence. Appellant contends that at the time it was made he was in an intoxicated condition amounting to mania or such impairment of mind and will as to make him unconscious of the meaning of his words, thereby rendering the statement inadmissible. He cites Warren v. State, 44 Ala.App. 221, 205 So.2d 916, cert. denied 281 Ala. 725, 205 So.2d 920 and Ray v. State, 39 Ala.App. 257, 97 So.2d 594.

We recognize the principle of law involved in this contention, but we distinguish the facts in the case at bar from those in Warren v. State, supra, which were much stronger in favor of the appellant's contention.

In Ray v. State, supra, which was affirmed, the court said:

"Ray's intoxication as affecting his ability to confess voluntarily is primarily a question of fact which addressed itself for admissibility to the trial judge and for credibility (and weight) to the jury. There is nothing in this record on which we can say the trial judge abused his discretion since we conclude that there must be shown a substantial impairment of the mind and will before drink can render a confession inadmissible. Thus,

in Smith v. State, 25 Ala.App. 297, 145 So. 504, 505, we find Rice, J., saying:

" 'The rule, as we understand it, is that intoxication less than mania does not exclude a confession made during its continuance; if claimed and proved, it only goes to the weight and credibility to be accorded by the jury to the said confession. * * *' "

■ Further in Winn v. State, 44 Ala. App. 271, 207 So.2d 138 and Anderson v. State, 45 Ala.App. 653, 235 So.2d 902, the court holds that intoxication which would affect the voluntariness of a confession is primarily a question of fact for the trial court to determine whether to admit it into evidence, and on being admitted this question goes only to the weight and credibility the jury may give the confession. We hold there was ample evidence upon which the trial court could conclude that the appellant was not intoxicated to the point of mania, and there was no abuse of discretion in admitting the statement into evidence.

■ We are further of the opinion that under the evidence offered by the State as to the voluntariness of the confession or statement made to Officer Wingard, the court could properly conclude that the appellant was fully advised of his Miranda rights and understood the matters read from the officer's card (statement of the Miranda rights), and the appellant's action was not the result of any promise, inducement, threat, or coercion but was voluntarily made. Bush v. State, 282 Ala. 134, 209 So.2d 416.

■ Appellant further contends that the statute under which appellant was indicted and tried does not cover a weapon such as the sawed-off shotgun, admitted into evidence over appellant's objection, and that the court's ruling in this respect was error.

Title 14, § 174, subsection (a), supra, refers to the ownership or possession of a pistol. Title 14, § 172 which defines the

meaning of certain words and phrases in the applicable Article 2 (in which both sections appear) defines a pistol as "any firearm with a barrel less than twelve inches in length." Based on these statutes, there was no error in the court's ruling.

The motion for a directed verdict (which we take as a motion to exclude the State's evidence) made at the conclusion of the testimony was properly overruled by the court under the evidence.

We are further of the opinion there was no error in the court's action in overruling appellant's motion for a new trial.

■ A decision of the trial court overruling a motion to set aside a verdict and grant a new trial will not be reversed unless the preponderance of the evidence against the verdict is so decided as to show that the verdict is wrong and unjust. See numerous cases cited in Alabama Digest, Volume 2A, Appeal and Error, ☞1005 (4). (Particularly So. Railway Co. v. Reeder, 281 Ala. 458, 204 So.2d 808; Taylor v. Thompson, 271 Ala. 18, 122 So.2d 277.)

■ It is further held that granting or refusing a motion for a new trial is a matter resting largely in the discretion of the trial court, and the exercise of this discretion carries with it a presumption of correctness. Shepherd v. So. Railway Co., 288 Ala. 50, 256 So.2d 883 (1970); State v. Edmundson, 282 Ala. 293, 210 So.2d 926 (1968).

■ The evidence offered by the State was ample to support the verdict of the jury, and the question of appellant's guilt or innocence was properly submitted for the jury's consideration.

Our search of the record reveals no error of a reversible nature, and this case is due to be affirmed.

The foregoing opinion was by Honorable W. J. Haralson, Supernumerary Circuit Judge, serving as a judge of this Court un-

der Section 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All Judges concur.