297 So.2d 391

**John Earl ALLEN**

v.

**STATE.**

**7 Div. 217.**

Court of Criminal Appeals of Alabama.

April 9, 1974.

Rehearing Denied May 21, 1974.

Robert Benham, Cartersville, Ga., Solomon Seay, Jr., Montgomery, for appellant.

CLARK, Supernumerary Circuit Judge.

This is an appeal from a conviction of a charge of murder in the second degree, as included in an indictment for murder in the first degree, and a sentence of imprisonment in the penitentiary for a term of fifty years.

On the night of June 15–16, 1972, Robert Brewster was killed at his home in Cedar Bluff, Alabama. There was testimony that his death was a result of his being stabbed in the chest with a sharp instrument.

Mrs. Sybil Brewster, daughter-in-law of deceased, who lived in his home, testified that she retired about 11:00 P.M. June 15 and was awakened by some noise; a man was standing at the foot of her bed; she identified him as the defendant and described him as a "slim colored man." She testified as to a struggle or fight with the man and that she fled from the house, went to a neighbor's home and asked the neighbor to "see about Mr. Brewster," who had been sleeping in a room that adjoined the room in which she had been sleeping.

A neighbor, a great-nephew of deceased, testified that after midnight of the same night Mrs. Sybil Brewster came to his home; she had blood all over her; they had a conversation, and he went to the home of deceased, but before he arrived there he saw somebody come out of the back door, whom he did not recognize. He

William J. Baxley, Atty. Gen., and Sarah M. Greenhaw, Asst. Atty. Gen., for the State.

went into Mr. Brewster's house and observed Mr. Brewster, who was still breathing and had "blood all over his chest." He next "went and called an ambulance." He testified that deceased was "a bootlegger," that he had been one for a long time and that "people frequently came to his house, negroes and white people, at all hours of the day and night" and that they "came there late at night."

Mrs. Geneva Moten, another witness for the State, testified that on the night involved, after she and her husband had gone to sleep, the defendant came to her home and asked her husband to "carry him to Chattanooga," which her husband declined to do.

After 1:00 A.M. of June 16, the officers went to the house in which defendant was residing with his mother and arrested him. He had gone to bed. A jacket that he had taken off was observed and, with other clothes, was taken into possession by the officers and brought to the office of the Sheriff of Cherokee County. In the jacket was a knife of two blades. The jacket and the knife were turned over to Mr. Brent Wheeler of the State Department of Toxicology, who testified that he found "what appeared to be a blood stain" on the knife and a "single hair, embedded in the handle portion of the knife," which he compared with a "known hair sample from the head of Robert Brewster, but made no determination or finding." He testified that the jacket "had evidence of what appeared to be blood stains on the front portion and on both sleeves." The witness further testified that he was unable to reach a conclusion as to what type of blood or blood stains were on the jacket or "under what circumstances it was there."

Insistences of error are based upon rulings of the trial court in admitting in evidence, over the objection of defendant, the jacket and knife and testimony with reference to them, some incriminating statements said to have been made by defendant to the officers after his arrest and while they were taking him to the sheriff's office and an admission or confession said to have been made by defendant to one A. D. Small approximately three weeks after defendant was arrested and while he was in the Cherokee County jail.

In brief of counsel for appellant the issues are defined as follows:

"(1) Whether evidence which is the product of an unlawful search and seizure should be admitted into the trial of a case if the defendant timely objects to its admission?

"(2) Whether confessions and incriminating statements obtained from a defendant in violation of constitutional rights are by virtue of their unconstitutionality inadmissible during the trial of a case."

The answers to (1) and (2) are necessarily in the negative and in the affirmative respectively, but in the development of the questions, appellant's counsel presents further, related questions as follows:

(1) Whether evidence as to the jacket and knife was the product of an unlawful search and seizure, and

(2) Whether incriminating statements and a confession obtained from the defendant were obtained in violation of his constitutional rights.

As to (1), we do not find that the evidence involved, the jacket and knife and testimony pertaining to them, was the product of an unlawful search and seizure. There was some evidence that it was, which is contained in the testimony of the defendant and his mother. On the other hand there was strong evidence that there was no violation of the constitutional rights of the defendant as to the jacket and knife, consisting of testimony of the officers to the effect that they made no search whatever of any part of the house, that the jacket, as well as other clothes of defendant, was in plain view, while the officers were in the house with the clear consent of the mother of defendant and de-

fendant himself, that there was no seizure whatever of the clothing, particularly the jacket in which knife was afterwards found, that possession of them by the officers was with the express consent of defendant, and that, as found by the trial court after a consideration of testimony taken out of the presence of the jury, the defendant "voluntarily and understandingly relinquished possession . . . without a search of the premises by the officers." Although not all of the testimony relative to the circumstances of the arrest of defendant at his home is free of conflict, it justifies the conclusion that there was no oppression, deception, or intimidation on the part of the officers. There was no evidence of any force exerted against him other than that one of the officers "grabbed" defendant, according to his mother, when the officer handcuffed him.

■ The action of the trial court in admitting in evidence the jacket and knife and testimony relative to them was not erroneous. Such a conclusion was reached in Martz v. State, 52 Ala.App. 200, 290 ·So.2d 661 (1974), cert. denied 292 Ala. 204, 290 So.2d 665, in which strikingly similar circumstances, except as to the claimed intoxication of defendant discussed immediately hereinafter, were involved.

■ There seems to be no doubt that appellant had been drinking at the time of his arrest, but there was positive testimony that he "wasn't drunk," and it is clear from the record that it cannot be said that he "was in an intoxicated condition amounting to mania or such impairment of mind and will as to make him unconscious of the meaning of his words," which in such or similar language has been the determinant of whether one's confession, if otherwise admissible, should be admitted in evidence. Johnson v. State, 51 Ala.App. 172, 283 So.2d 624, Ray v. State, 39 Ala. App. 257, 97 So.2d 594, Smith v. State, 25 Ala.App. 297, 145 So. 504. The test is equally applicable to whether one's consent is voluntarily and understandingly given.

One of the incriminating statements made by defendant while he was in custody the night of Mr. Brewster's death was stated by one of the witnesses as follows:

"He said he went to Mr. Bob Brewster's alone, and walked up on the porch there and he heard a groaning sound inside. He opened the door and went in and he turned a light on, and Mr. Bob Brewster was on the bed and he had blood on him, and he tried to help him, and then he got scared and ran."

The witness further said that the defendant stated that he did not hurt Bob Brewster in any way. Objections were made by defendant to the quoted statement, as well as other incriminating statements, and it was contended on the trial, and is contended now, that such in-custody statements should not have been admitted in evidence. Defendant relies upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and urges in addition that no probable cause was shown, without which the warrantless arrest was illegal.

As to *Miranda,* it is our view that defendant was fully advised of his right to remain silent and not incriminate himself and of his right to counsel, that after being adequately warned he voluntarily and understandingly waived such rights, and that there was no collision whatever between the ruling of the court in this respect and the requirements set forth in *Miranda.*

■ As to the contention that any lack of probable cause for the arrest precluded the admission of evidence of a confession or incriminating statement, we must hold to the contrary, in the light of Logan v. State, 291 Ala. 497, 282 So.2d 898, in pertinent part as follows:

"In Loyd v. State, 279 Ala. 447, 186 So.2d 731, this court said:

'We are not advised of any case holding that a confession is inadmissible for the reason that it was made

while a defendant was being held after being unlawfully arrested. As we note hereafter, the Supreme Court of the United States has held that evidence obtained as the result of an illegal search is not admissible, but we are not advised that the rule of exclusion has been applied to a confession, which is shown to have been voluntarily made, although the confessing person may have been illegally arrested. We are of opinion that the confession was not inadmissible on the ground that it was made after defendant had been taken into custody by an unlawful arrest.'

"Other recent cases holding the same are Bridges v. State, 284 Ala. 412, 225 So.2d 821 [6]; Braggs v. State, 283 Ala. 570, 219 So.2d 396 [3]; Hutto v. State, 278 Ala. 416, 178 So.2d 810 [6]; Goldin v. State, 271 Ala. 678, 127 So.2d 375 [8]; Ingram v. State, 252 Ala. 497, 42 So.2d 36 [11]; Vander Wielen v. State, 47 Ala.App. 108, 251 So.2d 240 [5]; Reed v. State, 48 Ala.App. 120, 262 So.2d 321 [2]. . . ."

The State was permitted to introduce in evidence, over the strenuous objection of defendant, testimony of one A. D. Small to the effect that defendant confessed to him that he had killed Mr. Brewster. The witness stated that this was while he visited defendant in the county jail July 8, 1972. We are convinced that such evidence was inadmissible under the circumstances, for the reasons hereinafter stated.

Although *Miranda* warnings were given defendant on the night of his arrest, there is no evidence that they were ever given between that night and three weeks later when, according to the witness Small, defendant stated that he killed Brewster.

■ As held in Jones v. State, 47 Ala. App. 568, 258 So.2d 910, relied upon in McBee v. State, 50 Ala.App. 622, 282 So. 2d 62, *Miranda* warnings are not required to be given before each separate interroga-

tion of a defendant after a valid waiver of his right has been made. Even so, the reasons that require *Miranda* warnings before an in-custody interrogation logically apply to an interrogation that takes place such a long period of time after warnings and waiver that under the circumstances it is to be reasonably concluded that defendant was not impressed thereby in making a confession. Intervening circumstances in various cases are necessarily variant, but three weeks confinement in jail under the circumstances shown in this case would seem to deprive the warnings and waiver of their previous efficacy.

■ *Miranda* does not usually apply to confessions made to persons other than law enforcement officers. Truex v. State, 282 Ala. 191, 210 So.2d 424; Logan v. State, 291 Ala. 497, 282 So.2d 898. In each of these cases, however, attention is drawn to circumstances in which *Miranda* will apply even though the person to whom the confession is made is not in the strictest sense of the term a law enforcement officer. In *Truex*, it is stated that it is not applicable "when confessions or admissions otherwise admissible are given to persons who are not officers of the law *nor their agents.*" (Emphasis supplied). In *Logan,* in discussing confessions or admissions made to officers in custodial interrogation and in determining whether the particular confession involved was made during custodial interrogation, we are told:

" . . . There is no evidence or inference therefrom that any officer was present or heard the confession or that cellmate Parker was a 'plant' or undercover agent of any officer. So there was no 'poisonous tree' and no 'fruit' of any illegal search or seizure or custodial interrogation."

The Sheriff of Cherokee County took part in the arrest and imprisonment of appellant-defendant on the night of the killing, and as such was head of the group of officers that participated in the arrest.

The witness Small, the only witness on voir dire or otherwise who testified as to the confession or circumstances of the confession, testified that the mother of the defendant asked the witness if he could help defendant and that he told her that he would go over and talk with him and see what he could do. The jailer admitted him to the jail. Upon being asked as to his motive in "going up there and obtaining a confession," he stated "my motive was, I was trying to help him as a christian in the church. It was my duty." Upon being questioned as to whether he talked to the boy at the suggestion of the Sheriff "in an attempt to secure a confession from him," he replied "I asked him to let me go in and talk to Earl, and he let me go in and talk to him." After he talked with defendant he told the Sheriff what defendant had told him.

The witness denied that at the time of the claimed confession he was a deputy sheriff. He said that sometime thereafter, about two months before trial, he had been a deputy in a case. At the time of the trial he held a pistol permit. He denied that the Sheriff sent him to interrogate defendant. Upon being asked as to whether he had ever been appointed as deputy sheriff by the Sheriff he stated "I have been appointed in some cases, but not in this one." His testimony in the presence of the jury, after voir dire examination, was in part as follows:

"I told Earl when I came up there that I came up there to help him, and Earl stood there and talked to me. I asked him where he was that afternoon before this occurred that night. He said he had been sitting around the house drinking some beer with some more boys. I asked him who was with him when he left there. He said he was by himself. And I said, 'How did you get in Brewster's house when you went up there?' He said the door was open. I said, 'I want the truth. I can't help you unless you tell me the truth. Did you kill Mr. Brewster?' "

After the court overruled defendant's objection, the witness replied:

"I asked him if he killed Mr. Brewster, and he said, 'Yes.' There was no other conversation, and I left."

On voir direct examination of the witness he testified in part as follows:

"A. I went out to see him, and was talking to him concerning what happened. I said, 'Earl, I came over here to talk to you. I come over here to see if I can ehlp [sic] you, but I can't help you unless you tell me the truth.' Those are the words that I spoke. There was a jail man in there with him. After we talked about thirty minutes or more, the jail man said, 'Why don't you tell the man the truth. He is trying to help you.' Earl said, 'I done it.' He admitted it. He shook me at the time, and I left."

The witness further testified on voir dire:

"I asked him who was with him, and he said, 'I was by myself.' I asked him, 'When you went in Mr. Brewster's house was there anybody with you?' He said, 'No'. I said, 'How did you get in the house?' he said the door was open. I said, 'You are not telling me the truth. Did you kill him?' Earl said, 'Yes', and I left out."

Title 45, § 115, Code of Alabama provides:

"The sheriff has the legal custody and charge of the jail in his county, and all prisoners committed thereto (except in cases otherwise provided by law), and may appoint a jailer for whose acts he is civilly responsible."

The circumstances of the connection between this important witness for the State and the Sheriff of Cherokee County, including the fact that participating in the interrogation was a "jail man," constrain us from treating the confession as one made to a person or persons so disconnected from law enforcement personnel that the principles of *Miranda* do not apply.

Moreover, irrespective of the question of the applicability of *Miranda,* we are persuaded that under all the circumstances the claimed confession should not have been admitted in evidence. As stated in Robinson v. State, 45 Ala.App. 74, 224 So.2d 675:

> "While it is not necessary to show the Miranda warnings were given when confessions are made to persons not officers of the law, Truex v. State, 282 Ala. 191, 210 So.2d 424, the burden is always on the state to establish that the confession was not obtained by threats, promises, hope of reward, or other inducements. Duncan v. State, 278 Ala. 145, 176 So.2d 840; Potter v. State, 44 Ala.App. 376, 209 So.2d 856."

■ According to the claim of the witness he came to defendant as a friend. His actions speak for themselves, much more distinctly than his words. He claimed that he wanted to help the defendant. He certainly did not help him. There is no evidence whatever that he attempted to help him. He asked for the truth and in effect told defendant what the witness claimed was the truth. We are of the opinion that there was error to the prejudice of the defendant in admitting the substance of the testimony of the witness Small, notwithstanding our appreciation of the outstanding ability, learning and fairness of the trial judge, as demonstrated by his conduct of the trial of the case as a whole.

■ Aside from any question of rejection of a confession because of its conflict with rules for protection of the privilege against self-incrimination as announced in *Miranda* and other cases, the confession involved here should be rejected, we think, because of its untrustworthiness. Nowadays the trustworthiness test, although previously regarded as transcendent if not decisive, is no longer applied as a conclusive rule of inclusion,[1] but untrustworthiness is still a logical basis for exclusion. That additional reasons have lately been found for rejecting evidence of a confession is no valid reason for not accepting a good reason that previously existed.

■ For a confession to be impermissible by reason of its being induced by an improper promise, it is not absolutely necessary that the promisor be an officer of the law. As stated by Judge McElroy in The Law of Evidence in Alabama, (2d ed.) Vol. II, § 200.06, p. 93:

> "However, the promise may render the confession inadmissible even though the promise was made by a person who held no public office or position. Thus, it has been held that the promise may come from 'any person connected with the prosecution, or connected with the accused, who may, considering his relations and condition, be fairly supposed by him to have power to secure him whatever of benefit is promised or to influence the threatened injury.'
>
> "Murphy v. State, 63 Ala. 1 (promise by clerk in burglarized store, who was part owner of the goods stolen therefrom); Owen v. State, 78 Ala. 425 (promise by son of owner of burglarized store); Gregg v. State, 106 Ala. 44, 17 So. 321 (promise by unofficial investigators who appeared to be clothed with authority to investigate).
>
> "It has even been held, at least impliedly, that a courthouse janitor who was assisting the sheriff in bringing the accused back to Alabama, had the appearance (to accused) of having the ability to perform the janitor's promise of a benefit to the accused. Ballard v. State, 225 Ala. 202, 142 So. 668, syl 3 (the report of case does not show what the janitor promised)."

■ The accused, in answer to a question of counsel for State, "You know that A. D. Small wasn't an officer of law?"

---

1. 3 Wigmore, Evidence, § 822 (Chadbourne, rev. 1970).

replied, "I guess." We think that the circumstances as a whole show that Small could have been "fairly supposed" by accused "to have power to secure him" the benefit promised. Small, according to his statement, asked for the truth; according to his contention and the contention of the State, he obtained the truth, which he had in effect dictated to, and obtained from, defendant by stating that he had not told the truth and that he couldn't help him unless he did. There is little, if any, difference between adjuring one to confess to the accompaniment of a promise of help and conditioning a promise of help upon receipt of a statement in accord with the adjurer's statement of what the truth is, which necessarily amounts to a confession. Thus reasoned Mr. Justice H. Somerville in the frequently-cited-with-approval case of Kelly v. State, 72 Ala. 244, in rejecting a confession made to one in the presence of another, who as constable held the defendant under arrest at the time. It was there held:

"It is no doubt the sounder doctrine, that a mere adjuration to speak the truth, addressed to a prisoner, will not authorize a confession induced by it to be excluded, where no threats or promises are applied.—Whart.Cr.Ev. §§ 647, 654; Aaron v. The State, 37 Ala. 106. Nor can a promise or inducement, be implied from the exhortation that it is best or better to tell the truth, it having been frequently so adjudged.—King v. The State, 40 Ala. 314; Aaron's Case, 37 Ala. 106; Whart.Cr.Ev. § 647; 2 Lead. Cr. Cases, 189. But the rule is otherwise, where the party has been told, by a person in authority, that it is better for him to confess, or that he will be bettered by saying a particular thing.—1 Phil.Ev., 4th Amer.Ed., 542–3; Whart. Cr.Ev. §§ 651, 654; 1 Whart.Amer.L. § 686.

"The exhortation to the prisoner did not stop with adjuring him to tell the truth, or only with telling him that the best thing he could do was to tell all about it, in the event he was guilty of the breaking. It goes further, by assuming his guilt, and by assuming also that the prisoner was accompanied by one or more accomplices; and he is told, in effect, that it would be best for him to tell all about these assumed facts. The manifest impression produced on the prisoner's mind must have been, that he would, in some unknown manner, fare better by confessing his guilt of the crime of burglary; and this inducement vitiates any confession evoked under its influence. Whart.Ev. § 651; State v. York, 37 N. H. 175; Vaughan v. Com., 17 Grat. 576; Clark's Man.Cr.L. § 2948."

We find that there was no evidence that the *Pre-Miranda* predicate was laid on the occasion of the reception of the claimed confession of Small. For the error in overruling the objection of the defendant to the testimony of Small as to the confession of defendant the judgment should be reversed and the case remanded for another trial.

The foregoing opinion was prepared by Hon. Leigh M. Clark, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Reversed and remanded.

All the Judges concur, except De CARLO, J., who concurs in result.

CATES, Presiding Judge (concurring):

In addition to the want of *Pre-Miranda* predicates (see Robinson v. State, 45 Ala. App. 74, 224 So.2d 675) I think that the State did not adduce clear and convincing evidence that Small was not the agent of the Sheriff.