The appellant, Rickey Horace Rankin, was charged in a two-count indictment with intentional murder during the course of committing a theft of lawful currency and intentional murder during the course of committing a theft of a .357 magnum pistol. The appellant pleaded not guilty and not guilty by reason of insanity. The appellant was found guilty of the capital offense as charged in the indictment and was sentenced to life imprisonment without parole.
 I
The appellant argues that a statement which he gave to a police dispatcher while he was in the hospital should have been inadmissible absent a showing that he was advised of his constitutional rights under Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Prior to trial, a suppression hearing was held on the statement which the appellant gave to Karen Smith [now Karen Smith Washington], a switchboard operator for the Prichard Police Department. Lieutenant Jack Harbin, of the Prichard Police Department, testified at the hearing that he was initially assigned as the detective in charge of investigating this case and that he did not talk to Karen Smith about the homicide or tell her that the appellant was a suspect in the case at any time on December 24 or December 25, 1985. A few days after Karen Smith talked to the appellant, Sergeant Fail told Lieutenant Harbin that she had spoken with the appellant and Lieutenant Harbin then informed Karen Smith that he needed a statement.
Karen Smith testified that she had known the appellant for most of her life and that they "practically grew up together." She testified that on December 25, 1985, she was working as a police dispatcher when she telephoned him after she heard that he had been shot. She had seen him the day before at her apartment. She testified that she had heard from another dispatcher that "a Rankin" was involved in a homicide, but did not know that it was the appellant. She stated that she "wondered if it was him" and called his mother's house and father's house to inquire. She was told that the appellant had been shot several times in the leg and foot and was in the hospital in Jackson, Alabama. She then telephoned the appellant at the hospital. She stated that when she placed the long distance call to the hospital, she billed it to her home telephone number. She testified that she was calling on her own *Page 579 
behalf and not for the Prichard Police Department. When she asked the appellant what had happened, he told her that he had been shot several times in the leg and in his foot. He stated that after he had left her house, he had apparently called a cab to take him to Prichard and that as he was getting out of the cab the driver fired shots at him.
The appellant's mother testified that officers with the Jackson Police Department had been to the hospital in order to talk to the appellant more than an hour before Karen Smith had called. He had told them that he was the man involved in the shooting. The appellant's mother testified that he told Officer Amos Jackson and another officer with the Jackson Police Department that he was walking down the road in Prichard when a cab driver stopped and backed up to him; that the driver told the appellant that he owed the cab driver for a previous ride; that the appellant told the cab driver that he did not have any money at that time; that the cab driver got out of the car, asked for his money and shot the appellant in the foot; that they then began struggling over the gun and the appellant was shot several times in the leg; that they wrestled to the ground and the cab driver was shot; and that the appellant believed the cab driver to be dead, crawled to the cab, and drove away to find help.
The appellant's brother-in-law, James Pugh, testified that, while in the hospital, the appellant had decided to "turn himself in" and therefore he telephoned the Jackson Police Department. He testified that he was present when the appellant gave the police his statement and that later Karen Smith telephoned the appellant.
Officer Amos Jackson testified that he responded to a call informing him that someone at the hospital wished to talk to the police. He testified that the appellant admitted that he had shot the cab driver and then told him his version of how it happened. In response to the court's questioning, Officer Jackson testified that he did not arrest the appellant or restrain him in any manner.
The appellant argues that he was in custody when he made the statement to Karen Smith and therefore he should have been informed of his Miranda rights.
"Miranda warnings are not required in instances where inculpatory or otherwise admissible statements are made to persons who are not law enforcement officers or their agents.Hinshaw v. State, 398 So.2d 762 (Ala.Crim.App. 1981), writ denied, 398 So.2d 766 (Ala. 1981); Truex v. State, 282 Ala. 191, 210 So.2d 424 (1968); Ellis v. State, 338 So.2d 428
(Ala.Crim.App. 1976); Bedingfield v. State, 47 Ala. App. 677,260 So.2d 408 (1972)." Warrick v. State, 460 So.2d 320 (Ala.Cr.App. 1984). See also State v. McDevitt, 484 So.2d 543, 547
(Ala.Cr.App. 1985). Miranda does not apply when the inculpatory statement is made to a private citizen, but only to the custodal interrogation of a suspect by the police. Traylor v.State, 439 So.2d 178, 180-81 (Ala.Cr.App. 1983).
In determining whether Karen Smith was acting as a law enforcement officer or as an agent of the police department, "we must look to the circumstances surrounding the giving of the confession," Woodson v. State, 392 So.2d 551, 552-53
(Ala.Cr.App. 1980), cert. denied, 392 So.2d 554 (Ala. 1981). The record indicates that Karen Smith was hired by the police department as a dispatcher and not as a law enforcement officer. She testified that she made the telephone call as a friend and was not instructed by the police department to make the call. Nor did she inform the authorities of the appellant's statement until she was approached by Lieutenant Harbin several days later. Furthermore, she billed the telephone call to her home telephone. See Terry v. State, 397 So.2d 217, 220
(Ala.Cr.App.), cert. denied, 397 So.2d 223 (Ala. 1981) (wherein a security guard was found not to have been acting as an agent for the police when he asked the appellant which gun belonged to him and returned his pistol; this court found that "[t]here is no evidence that the guard was acting under the control or at the request of the police in returning the pistol"). *Page 580 
The appellant cites Allen v. State, 53 Ala. App. 66,297 So.2d 391 (1974), to support his argument. However, that case is distinguishable on its facts in that the witness to whom Allen confessed, who served as a deputy sheriff "in some cases," asked the sheriff if he could speak to the appellant and immediately after doing so informed the sheriff of what the appellant had told him. Additionally, this court noted in Allen
that under the circumstances, it could not say that the witness was not acting as an agent of the sheriff, because a "jail man" also participated in the interrogation. The court then held that "irrespective of the question of the applicability ofMiranda," the confession was inadmissible because it was involuntary. In the present case, the actions of Karen Smith in telephoning the appellant were not connected to her employment by a law enforcement agency as were the actions of the deputy sheriff in Allen in obtaining the confession. "The admissibility of a confession is determined not so much by the person to whom it was made as by the manner and circumstances under which it was procured." 29 Am.Jur.2d, Evidence § 554 (1967).
Karen Smith was acting as a private citizen in calling the appellant. "In the Miranda case the Court defined interrogation as 'questioning initiated by law enforcement officers.' Because of this and also because of the general doctrine that State action is a prerequisite to application of constitutional protections, it is clear that Miranda does not govern interrogation by private citizens acting on their own." LaFave and Israel, Criminal Procedure, § 6.10(b) (1984). (Footnotes omitted.) See also Annot., 31 A.L.R.3d 565 at 671 (1970).
 II
The appellant argues that the trial court's instructions to the jury that "every person over the age of 14 is presumed by the law to be responsible for his acts" was improper as a violation of due process and the United States Supreme Court's decision in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450,61 L.Ed.2d 39 (1979). In determining whether a portion of the oral charge is erroneous, "the whole charge may be looked to, and the entire charge must be construed together to see if there be reversible error." Harris v. State, 412 So.2d 1278,1281 (Ala.Cr.App. 1982); Bighames v. State, 440 So.2d 1231,1234 (Ala.Cr.App. 1983). The trial court charged the jury, in part, as follows:
 "Every person over 14 years of age is presumed by the law to be responsible for his acts; that is to say, that it is presumed he has sufficient mental capacity to appreciate that certain types of conduct are criminal or are acts which are against the law and also has sufficient mental capacity to conform his actions and conduct to the requirements of the law. That the requisite mental responsibility is presumed by the law means that it is a fact in the case which must be considered by the jury along with all of the evidence.
 "By his plea raising the issue of whether he was mentally responsible for his alleged acts, the Defendant assumes the burden of proving to the reasonable satisfaction of the jury that, one, at the time of the commission of the alleged acts constituting all or an essential element of the offense with which he is charged he was suffering from mental disease or defect; and two, that as a result of such mental disease or defect he was either, A, unable to appreciate [that] the commission of the alleged acts would constitute criminal conduct or, B, he was unable to conform his conduct to the requirements of the law or both."
The appellant raised a plea of not guilty by reason of insanity. The trial court's charge addressed the law concerning this defense, and the language in question, that "every person over 14 years of age is presumed by the law to be responsible for his acts," follows the language of § 15-16-2, Code ofAlabama (1975). The constitutionality of this statute has been previously upheld.
 "In Alabama, by statute, all persons over fourteen years of age are presumed to be responsible for their acts. Section 15-16-2, Code of Alabama 1975. This presumption is not contrary to due process *Page 581 
under the Fourteenth Amendment. Hutchens v. State, 45 Ala. App. 507, 232 So.2d 687 (1970); Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). The statute is constitutional and does not invade 'any constitutional right of the defendant in imposing upon him the burden of proving the plea of insanity'. Martin v. State, 119 Ala. 1, 25 So. 255 (1898)."
Watters v. State, 369 So.2d 1262, 1270 (Ala.Cr.App. 1978), reversed on other grounds, 369 So.2d 1272 (1979).
The holding in Sandstrom v. Montana, supra, addressed a trial court's charge as to the element of intent which stated that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Supreme Court held that this language unconstitutionally shifted the burden of proof away from the State and to the defendant. However, insanity is an affirmative defense and the burden of proof is on the defendant to support his plea of insanity. Knight v.State, 273 Ala. 480, 142 So.2d 899 (1962); Rice v. State,204 Ala. 104, 85 So. 437 (1920); Bullard v. State, 408 So.2d 164
(Ala.Cr.App. 1981), cert. denied, 408 So.2d 167 (Ala. 1982). This burden never shifts to the prosecution. Grammer v. State,239 Ala. 633, 196 So. 268 (1940). The record is devoid of any error by the trial court in its instructions to the jury.
 III
The appellant claims that the trial court erred in giving three charges which were requested by the State concerning the theft of the gun. He further contends that the trial court erred in failing to give his requested jury instructions as to compulsion or duress.
The trial court properly gave the three charges requested by the State concerning the theft of the gun. These charges stated:
"STATE'S REQUESTED JURY CHARGE # 1
 "I charge you members of the jury, that the taking of the pistol which is the murder weapon can also be the subject of the robbery element of the capital crime if you are convinced beyond a reasonable doubt that the defendant used force or violence in the course of committing a theft of the pistol and intended to deprive the (owner), (James Carpenter) of his/her property.
"Crowe v. State, 435 So.2d 1371 at 1379 (1983).
"STATE'S REQUESTED JURY CHARGE # 2
 "I charge you members of the jury, that the fact that the victim was dead at the time of the taking of the (property) (money or pistol) would not mitigate against the crime of robbery if the events of the intervening time between the murder and the taking formed a continuous chain of events.
 "Cobern v. State, 273 Ala. 547, 142 So.2d 869
(1962) cited in Johnston v. State, 479 So.2d 1377, at 1381 (1985).
"STATE'S REQUESTED JURY CHARGE # 3
 "I charge you members of the jury, that even if the defendant killed the victim for some purpose unrelated to the theft, the taking of the property from the victim after the murder constitutes robbery, if the murder and the subsequent taking of the property formed a continuous chain of events.
"Johnston v. State, 479 So.2d 1377 at 1380 (1985)."
The language in these charges was held proper in the cases following each charge. The appellant argues that these charges are abstract because they fail to include the law pertaining to duress or compulsion. He cites no law in support of his argument. However, the evidence of this case does not support a charge as to the defense of compulsion or duress; neither could such language be added without making the instructions confusing and misleading.
The trial court properly declined to charge the jury on duress or compulsion because the evidence in this case did not warrant it. The trial court may properly refuse a written requested charge which is not applicable to the evidence presented at *Page 582 
trial. Scanland v. State, 473 So.2d 1182 (Ala.Cr.App. 1985), cert. denied, 474 U.S. 1035, 106 S.Ct. 602, 88 L.Ed.2d 581
(1986); Rogers v. State, 417 So.2d 241 (Ala.Cr.App. 1982);Taylor v. State, 408 So.2d 551 (Ala.Cr.App.), cert. denied,408 So.2d 555 (Ala. 1981). While the appellant presented a defense of self-defense, claiming that he killed the victim in order to protect himself from the victim's attack, there was no evidence that the appellant was under duress from some third party.
 IV
The appellant argues that the trial court erred by stating that self-defense was part of the reasonable doubt standard and was not an affirmative defense. He further argues that he requested the court to charge that self-defense, if proven to the reasonable satisfaction of the jury, could justify a verdict of acquittal. A review of the record shows that the trial court correctly charged on the law of self-defense. " 'The oral charge need not state the legal principle exactly as it appears in the requested charge. The principle expressed in the requested charge need only be fairly and substantially covered in the trial court's oral charge.' Tyson v. State,361 So.2d 1182, 1188 (Ala.Cr.App. 1978)." Johnson v. State,497 So.2d 600, 602 (Ala.Cr.App. 1986).
Furthermore, the trial court correctly instructed that the burden of proof is not on the defendant to prove self-defense beyond a reasonable doubt. Rather, as the trial court stated, "When the evidence relating to self-defense together with all evidence produces in the mind of the jury a reasonable doubt as to his guilt, he is entitled to an acquittal." See Wilson v.State, 484 So.2d 562 (Ala.Cr.App. 1986); Vaughn v. State,293 Ala. 365, 304 So.2d 6 (1974), cert. denied, 423 U.S. 857,96 S.Ct. 109, 46 L.Ed.2d 83 (1975).
AFFIRMED.
All the Judges concur.