On Application for Rehearing

HOOPER, Chief Justice.
The opinion of May 19, 2000, is withdrawn and the following is substituted therefor.
J.D.H. was convicted of first-degree sodomy and first-degree sexual abuse. He was sentenced to life in prison on the sodomy charge and to 10 years’ imprisonment on the sexual-abuse charge, with the sentences to run concurrently. The Court of Criminal Appeals affirmed without an opinion, but with a dissenting opinion. J.D.H. v. State, 797 So.2d 1126 (Ala.Crim.App.1999). We granted certiorari review to consider this issue: Whether a 16-day lapse between an advisement of those rights prescribed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the defendant’s giving a custodial statement makes the statement inadmissible at trial'. We conclude that it did. Thus, we reverse and remand.
J.D.H. was arrested on November 6, 1996, and was charged with first-degree sodomy and first-degree sexual abuse. Officers advised him of his Miranda rights before interrogating him that day. He waived his rights and agreed to speak with the police. He said nothing incriminating, but agreed to take a polygraph examination. He was placed in jail. Sixteen days later, on November 22, 1996, J.D.H. was *1131 brought from the jail to the courthouse to take the polygraph examination.
Lt. Ken Mays, a polygrapher for the Alabama Bureau of Investigation, met J.D.H. and proceeded to conduct the pre-polygraph interview. J.D.H. received no Miranda warnings before that interview, and no one reminded him of his previous waiver. The prepolygraph interview consisted of a written questionnaire. This questionnaire asked J.D.H. detailed questions about the allegations against him and asked for possible explanations for those allegations. When J.D.H. finished filling out the questionnaire, Lt. Mays spoke briefly with him.
Lt. Mays testified at the suppression hearing:
“I advised [J.D.H.] after reviewing the paperwork, the statements that he wrote in written form, that the next step would be to administer the polygraph examination. I advised [J.D.H.], as I do all people who are prior to taking polygraph, that I didn’t know whether he was, at that point whether he was guilty of the act that he was accused of or not, that in my opinion I would know within 30 minutes to an hour, if he took the polygraph. At that point I advised [J.D.H.] that if he were guilty of the act that he was accused of that it would be my advice to him not to take the polygraph. But if he was not guilty of the act that he was accused of in my opinion he should take the polygraph. At that point, I asked [J.D.H.] if he was prepared to take the polygraph examination, at which point if he had been prepared and advised me that he was prepared, I would have, the next step is to get him to fill out a polygraph form which includes a waiver of rights and things of that nature. However, he said that, based on my recommendation, he didn’t want to take the polygraph. At that point, I told him, in my best judgment, he needed, we needed to call the investigator back in the room then and he needed to talk to the investigator. And I asked him if he wanted to do that, and he said he did.”
At that point, Lt. Mays said, he “summonsed Steve [Rogers] back into the room.” Lt. Mays said he “prepared to leave, after telling Steve [Rogers] that [J.D.H.] wanted to talk to him.” Officer Rogers then took from J.D.H. a statement that amounted to a confession.
At no point during this time was J.D.H. advised that the polygraph results would be inadmissible in court, that he still had the right to remain silent, or that he had a right to consult an attorney.
At trial, J.D.H. moved to suppress the statement he made to Officer Rogers on November 22, 1996. The trial court denied the motion. A jury convicted J.D.H. The Court of Criminal Appeals affirmed the conviction, over Judge Cobb’s dissent. We agree with Judge Cobb that 16 days exceeds a permissible time between an advisement of rights and a custodial interrogation.
This Court recognizes that the Court of Criminal Appeals has a line of cases holding that once Miranda warnings have been given and the defendant has made a knowing, intelligent, and voluntary waiver, a failure to repeat the warnings will not automatically preclude the admission of an inculpatory statement. See Hollander v. State, 418 So.2d 970 (Ala.Crim.App.1982) (between 1 and 1.75 hours passed while police were searching house; no repeat of Miranda warnings); Fagan v. State, 412 So.2d 1282 (Ala.Crim.App.1982)(lapse of 3 /£ hours did not require a renewed warning); Smoot v. State, 383 So.2d 605 (Ala.Crim.App. 1980)(lapse of 30 minutes between the warnings and the statement); Burlison v. State, 369 So.2d 844 (Ala.Crim. *1132 App.1979) (lapse of 45 minutes between the reading of Miranda warnings and the taking of a statement did not require a repeat of the warnings); Johnson v. State, 56 Ala.App. 583, 324 So.2d 298 (1975)(three to four days, with a reminder of the warnings); Jones v. State, 47 Ala.App. 568, 258 So.2d 910 (1972)(warning was given one day and statement made the following morning). However, we note that in most of those cases the time lapse was not more than a few hours. In none of those cases did the lapse exceed a few days without at least a reminder of the warnings. See Johnson v. State, supra.
In Allen v. State, 53 Ala.App. 66, 71, 297 So.2d 391, 395 (Ala.Crim.App.1974), the Court of Criminal Appeals held that three weeks’ confinement in jail caused the Miranda warnings to lose their “efficacy.” In Allen, after the defendant had been in jail for three weeks, a “friend” went to see him. The friend told him that if he told the friend the truth, the friend could help him. The defendant confessed to the friend, and at trial the friend testified about the confession. The Court of Criminal Appeals held it was error to admit the evidence of the confession, which was made three weeks after the defendant had been given Miranda warnings. The court held the evidence of the confession inadmissible even though the witness was not a law-enforcement officer, because of the “circumstances of the connection between this important witness ... and the [sheriff.” 53 Ala.App. at 72, 297 So.2d at 397.
In Freeman v. State, 342 So.2d 435 (Ala.Crim.App.1977), the Court of Criminal Appeals again held that the passage of a significant amount of time caused Miranda warnings to lose their efficacy. In Freeman, after spending three weeks and five days in jail, the defendant was brought to the courthouse for an interview with the sheriff. Although counsel had been appointed, the sheriff made no effort to have counsel present. The Court of Criminal Appeals called the interrogation “a subterfuge to evade due process and [the] defendant’s Miranda rights.” 342 So.2d at 437.
We find J.D.H.’s case to be more analogous to Allen and Freeman than to the cases cited earlier and holding that the lapse of time had not defeated the warnings. The time that passed between the date J.D.H. was given the Miranda warnings and the date he made the confession was 16 days, or 2 weeks and 2 days. It is this Court’s opinion that after two weeks the warnings ordinarily will have lost their efficacy. However, this Court has stated that in determining whether a confession was voluntary a court should look to the totality of the circumstances. McLeod v. State, 718 So.2d 727 (Ala.), on remand, 718 So.2d 731 (Ala.Crim.App.), cert. denied, 524 U.S. 929, 118 S.Ct. 2327, 141 L.Ed.2d 701 (1998). The lapse of time in this case, considered in the context of the circumstances surrounding the confession, required that the evidence regarding that confession be excluded, there being no showing that the defendant had received a new warning before he made the confession.
The defendant agreed to take a polygraph examination when he was first arrested. The record does not indicate that he had any control over when the exam would be given. On November 22, 1996, J.D.H. was taken from the jail to the courthouse. At the courthouse, he met Lt. Mays and filled out the prepolygraph written questionnaire. The questions on that form asked specifically about the charges against him and asked him to admit or to deny the allegations and to provide possible explanations. When Lt. Mays reviewed the forms and then “advised” J.D.H. that he should not take the test if *1133 he was guilty, Lt. Mays did not tell J.D.H. that the test results were inadmissible. When Lt. Mays advised J.D.H. not to take the test if he was guilty, he did not say that J.D.H. could refuse to take the'test by opting to “remain silent.” Nor did Lt. Mays tell J.D.H. that remaining silent was still an option. Instead, when J.D.H. said he did not want to take the test, Lt. Mays told Rogers that J.D.H. had “confessed.”
These actions were designed to elicit an incriminating response. See Rhode Island v. Innis, 446 U.S. 291, 292, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (police action constitutes interrogation if the actions or words are “reasonably likely to elicit an incriminating response”). These actions overbore any will J.D.H. may have had to remain silent and not incriminate himself. The State argues that because no one promised anything to J.D.H. the actions of Lt. Mays and Officer Rogers were not coercive. However, their actions were far more coercive and overbearing than a mere mention of leniency. The officers removed J.D.H.’s choice to be silent. They backed him into a corner. If J.D.H. took the test and failed it, Lt. Mays would “know” J.D.H. was guilty; if J.D.H. chose not to take the test, by choosing to remain silent, then Lt. Mays would know that he was guilty. In fact, Lt. Mays took J.D.H.’s refusal to take the test to be a “confession,” and that refusal was then used to cause him to feel that he had no choice but to confess. Lt. Mays used the defendant’s choosing to remain silent to coerce him into confessing.
The purpose of a Miranda warning is to ensure that any waiver of the right against self-incrimination is a knowing, intelligent, and voluntary one. There was nothing voluntary about J.D.H.’s waiver of his right to remain silent. We reverse the judgment of the Court of Criminal Appeals and remand for proceedings consistent with this opinion.
OPINION OF MAY 19, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
HOUSTON, COOK, LYONS, JOHNSTONE, and ENGLAND, JJ„ concur.
BROWN, J., recuses herself.*