329 So.2d 160

Brenda Jean JOHNSON

v.

STATE.

1 Div. 626.

Court of Criminal Appeals of Alabama.

March 16, 1976.

Calvin Clay, Mobile, for appellant.

471

William J. Baxley, Atty. Gen., and James S. Ward, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of robbery and her punishment fixed at ten years in the penitentiary. At arraignment with retained counsel present she pleaded not guilty. After sentence was imposed, she gave notice of appeal. The execution of the sentence was suspended pending appeal and an appeal bond was set at $7,500.00. She was determined to be indigent and a free transcript was furnished her and new counsel was appointed to represent her on appeal.

The evidence for the State is undisputed that in the early morning hours of February 23, 1975, the Magic Mart Grocery Store located at 2320 Government Street in Mobile, Alabama, was robbed by a lone gunman armed with a pistol.

Mary Massengill testified that she was employed by the Magic Mart and that her hours of employment were from 11:00 p.m. until 7:00 a.m. She stated that in the early morning hours of that date a man with long sandy hair who appeared to be in his late forties and five feet, eight or nine inches tall pointed a pistol directly in her face and stated he wanted all the money. He told her to set the cash register drawer on the counter and he got all the money out of the drawer. With the pistol still pointed on her he motioned toward the safe and said he wanted the rest of the money saying, "I don't want to hurt you." She stated she was terrified about the pistol being pointed directly at her and she gave him the money bag from the safe and that the total amount taken was $470.00 in 20's, 10's, 5's, 1's and some change.

This witness further testified that she had seen this man, along with another man and woman, before the actual robbery took place. She said that a blonde headed man with a moustache came in the store with a girl and the girl bought a bag of potato chips, and she asked the girl if she was going to pay for the gas and she said, "No, he is." Two dollars worth of gas was bought before the holdup. She observed the automobile at the gas pumps and it was a white Mercury with a luggage rack on top.

On cross-examination Miss Massengill testified she did not pay any attention to the girl and could not identify her. She stated that $470.00 in currency and change

was taken and that $465.50 was subsequently recovered.

She further testified that Mr. Bruce Fowler, a federal man with the Corps of Engineers, was in the store when the robber came in with the pistol. He pointed the pistol on Mr. Fowler and told him he wanted his weapon and that Mr. Fowler told him he would have to take it from him.

On re-direct examination Miss Massengill said she could positively identify the man who held her up. That as soon as the man walked out of the store she picked up the telephone and called the Police Department and Mr. Fowler took the telephone and talked to the police.

Mr. Bruce Fowler testified that he was employed with the General Services Administration as a federal detective. He said he had been with the Federal Protective Service for three years and that on February 23, 1975, he was keeping the U.S. Corps of Engineers building under surveillance which building was next door to the Magic Mart that was robbed that morning. He stated that he walked into the Magic Mart at 3:53 a.m. to get a cup of coffee and at 3:55 a.m. a man came in and held up the store. He said the man told the clerk and him that this was a holdup and told Fowler to drop his gun belt. Fowler told the man if he wanted his gun, he would have to take it and he raised his hands. He stated the man moved behind him and put a .38 caliber pistol to the rear side of his head and unstrapped the safety strap on his gun belt and took Fowler's pistol and told him to move to the rear. Fowler moved to the rear of the store and positioned himself where he could see toward the front. He saw Miss Massengill pass the man a bag of money over the counter. He heard a conversation but could not understand what was being said. He heard a metal clanging on the counter and saw a white bag in the hands of the robber.

Mr. Fowler described the robber as being between 45 and 55 years of age and was approximately five feet, nine, and weighed 150 to 160 pounds. He had sandy red hair, freckled face, fair complexion and was wearing a tan-gold field jacket with light brown pants. He was shown State's Exhibit No. 1 and asked if he had seen it before and stated it appeared to be the same weapon that was held to his head when his pistol was taken.

This witness further testified that he had seen the robber a few minutes earlier get gas in a white square styled Mercury with a luggage rack on top. That after the robbery he saw the man moving toward the door and he put the pistol in his coat pocket as he went out the door. At this point the store clerk got on the telephone and called the City police, and he took the telephone from her and gave an all points bulletin to the police describing the robber, his clothes and the Mercury automobile.

Mr. Fowler further testified that he did not see appellant at the time the store was robbed. He saw her for the first time at the preliminary hearing.

Michael Lyness testified that around three o'clock on the morning of February 23, 1975, he and four other friends were walking up the street toward the Magic Mart when they saw a car parked on the corner. He described the car as being white with a luggage rack on top. He also stated the car had a license plate from the State of Washington on it. He stated that the car was slowly backing up as he and his friends approached the Magic Mart and he saw two men running from around the corner. He said one man was old and the other man had a moustache and long hair and one of the men had a gun and the other man had a bag.

This witness further testified that he saw the two men get in the white Mercury on the passenger side as the car was slowly moving backwards. He stated that neither

one of them got in on the driver's side of the Mercury. He said he went to the Magic Mart and told the police exactly what he had seen and pointed in the direction in which the white car was heading when he last saw it.

Police Officer David Havard testified that he had been with the Mobile Police Department for five years and was assigned to the patrol division on the midnight shift. He stated he was familiar with the Magic Mart on Government Street and that around 3:55 a.m. on February 23, 1975, while he was at Roy Cranford's Barbecue on Highway 90, a holdup alarm came over his radio. He explained that a holdup alarm is the actual conversation between the person that has been robbed and the dispatcher at the police station and that the conversation is transmitted directly over the radios in all police cars and they receive a description and the information at the same time the operator does. The officer stated that when he heard the broadcast, he got in his patrol car and pulled out to Highway 90 and observed an old model white Mercury with a luggage canvass cover over the top with luggage underneath it. It had State of Washington plates on it. The car was headed west on Highway 90 away from the City of Mobile and was occupied by three subjects. He got on the radio and advised the operator that he had the suspect car spotted on Highway 90 and was going to attempt to stop it. He followed the car a short distance and turned on the blue light and stopped the Mercury on Highway 90 near the Pleasant Valley Road.

From the record:

"Q What if anything happened, then?

"A A white female got out of the car on the driver's side—driver of the car. She was heading back to the scout car. I asked her to stop where she was. I got my shotgun out and by that time the backup unit had arrived. I asked the white female to approach my vehicle and

asked for identification. She presented a driver's license with a name Brenda Johnson. It was a Texas driver's license.

"Q Is that person in this courtroom today?

"A Yes, sir.

"Q Point her out for the ladies and gentlemen of the jury?

"A The defendant sitting beside Mr. Stevens.

"Q Let the record show he indicated Miss Brenda Jean Johnson. What if anything happened then, please sir?

"A The backup unit arrived. We took the other two suspects out of the vehicle. All three were placed under arrest for robbery. She was placed in back of my scout car.

"Q And?

"A In the investigation for stolen property on the vehicle we found the money bag in the back seat. One of the suspects was taken out of the passenger side and he had a large quantity of money in his coat pocket. We found revolvers in the front seat accessible to all three suspects. The suspect here had ammunition for a twenty two caliber weapon in her pocketbook. A twenty two caliber pistol was found underneath the seat along with a thirty eight revolver and several other guns found in the back seat."

The officer then identified State's Exhibits 1, 2, and 3 as pistols that were taken from the car driven by appellant and also identified State's Exhibit 4 as a .22 caliber pistol that was taken from beneath the seat of the car driven by appellant. He stated that a number of .22 caliber bullets were found in appellant's purse.

On cross-examination the officer stated that a description of the car driven by appellant was given in the radio dispatch. He said he did not find the .22 caliber pistol on appellant nor did he have knowledge of whether the gun was registered to her. He further stated that appellant told him the box of ammunition in her purse belonged to her. He further stated that appellant told him the two men in the car with her were her brothers, but he stated the two men denied any such relationship.

At this point the State rested and appellant moved to exclude the State's evidence on the ground a prima facie case was not made out against appellant. The motion to exclude was overruled.

Appellant was the only witness in her behalf. She testified that she was born in Beaumont, Texas. She stated she was married but was served with divorce papers and actually divorced while she was incarcerated in the jail in Mobile. She left Texas on January 31, 1975, and went to New Orleans. She left New Orleans around February 21, 1975, and went to Biloxi, Mississippi, where she found a job as a waitress in a bar in Gulfport, Mississippi. She worked the night of February 22 in Gulfport and left to go to Mobile, Alabama. She stated she went ot Mobile with two other people in a white Mercury with a traveling rack on top.

She further testified that she was around the Magic Mart on Government Street around 3:55 or 4:00 in the morning where they stopped to get gas. She stated that both men got out of the car, but she was not certain whether they actually put gas in the car as she was not paying attention. She said that both of these men entered the store and when she saw them coming out they were not running or waving guns or carrying any bags. She stated she never left the car the entire time and that when the two men got back to the car, the same male that had driven there got behind the steering wheel and took off.

She continued by testifying that she met two men in New Orleans. Their names were Robert L. McDaneld and Norman L. McDaneld. She met them on February 16, 1975, and she left New Orleans with them. She stated when they stopped at the Magic Mart, she did not know or have any knowledge that there was a robbery in process. She further stated that she had not participated in any robbery.

She admitted that she had seen the guns identified during the trial in the car before the robbery but she did not know who the guns belonged to except to say that none of them belonged to her. She specifically said that the .22 caliber pistol did not belong to her.

She repeated that she did not have any knowledge of a robbery. That the robbery was not discussed in her presence either immediately prior to or after they arrived at the Magic Mart. That she did not realize that the robbery had been committed or that anything wrong had happened until she was stopped by the police, and that she did not participate in the robbery in any way.

On cross-examination appellant testified that she told Officer Havard that the ammunition in her purse belonged to her, but said she did not know these bullets were in her own purse. She further stated that after meeting the McDaneld brothers on February 16, 1975, she had seen two pistols and one rifle and that these guns were usually covered up with clothes in the car. She said these two men had all their belongings with them in the car. She stated that the first time she saw a money bag was when the two men got in the car after leaving the Magic Mart and that she just got a glimpse of it as it was pushed underneath the car seat when the men got back in the car. She admitted that one of the men did in fact have a money bag in his hand as he re-entered the car.

Under further cross-examination appellant admitted she was driving the car and

was backing it along the street in front of the Magic Mart during the robbery. She stated the reason she was backing the car was that the two men told her when she saw them coming to have the car ready with the motor running as they were going to turn around and go back to Mississippi. She said she checked the men when they came from the Magic Mart because she thought something must have gone wrong as they had been gone for such a long time. She further stated that they stopped the car on a side street a short distance from the Magic Mart before the two men went into the store and the reason for stopping the car was for her to drive when she saw them coming from the store.

Appellant described the car she was in as a white Mercury, 1966 model, with a Washington State tag and a luggage rack on top. She said that when the men re-entered the car, they got in on the passenger side.

On re-direct examination appellant testified that the two men did not mention at any time after they left the store that they had just robbed it.

Appellant testified that her husband was a seaman and was probably in Port Arthur, Texas. That she took up with these two men can hardly be disputed. She admitted spending the night with the younger brother in an apartment in New Orleans before they came to Mississippi and then to Alabama. If they had not been caught after robbing the Magic Mart, she would probably still be with them wherever their destination might be.

■ The three essential elements of the crime of robbery are: (1) felonious intent, (2) force, or putting in fear as a means of effecting the intent, and (3) by that means of taking and carrying away the property of another from his person or in his presence, all of these elements concurring in point of time. *Cobern v. State,* 273 Ala. 547, 142 So.2d 869; *Floyd v. State,* 52 Ala.App. 291, 291 So.2d 382; *Tarver v. State,* 53 Ala.App. 661, 303 So.2d 161;

*Williams v. State,* 48 Ala.App. 737, 267 So.2d 526.

■ Where several persons participate in a robbery, it is immaterial which one takes the property. *Murphy v. State,* 52 Ala.App. 490, 294 So.2d 457; *Gibson v. State,* 49 Ala.App. 18, 268 So.2d 49; *Parsons v. State,* 33 Ala.App. 309, 33 So.2d 164.

By her own testimony appellant was the driver of the getaway car, and she was found with a box of .22 caliber bullets in her purse which she admitted belonged to her. A .22 caliber pistol was found under the front seat of the automobile she was driving when she was stopped by the police. She was seen at the scene of the robbery backing the car to help the robbers make good their escape.

■ Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Whether there is such evidence is a question of law, its weight and probative value are for the jury. *Haggler v. State,* 49 Ala.App. 259, 270 So.2d 690; *Price v. State,* 53 Ala.App. 465, 301 So.2d 230; *Hawkins v. State,* 53 Ala.App. 89, 297 So.2d 813; *Moore v. State,* 52 Ala.App. 394, 293 So.2d 309.

A motion for a new trial was filed by new counsel. The main thrust of this motion was that appellant did not have adequate and competent counsel during her trial in chief because her employed counsel was also employed to represent a defendant charged with the same robbery. It is alleged in the motion that appellant's employed counsel had a conflict of interest in representing two people charged with the same crime. The trial judge heard considerable testimony on the motion for a new trial and also on the motion for a rehearing of the motion for a new trial. Conflicting testimony abounded during this hearing.

At her trial in chief appellant testified that she did not know anything about the

robbery of the Magic Mart on Government Street in Mobile, Alabama, on February 23, 1975, and did not participate in the crime in any way. She did admit driving the getaway car because the McDaneld brothers instructed her to do so. Evidently the jury did not believe her testimony as they took only 18 minutes to return a verdict against her.

Appellant testified during the hearing on the motion for a new trial and admitted that she committed perjury during her trial in chief. She further stated she told her lawyer everything in connection with the robbery.

Her attorney testified that appellant repeatedly told him that she did not know anything about the robbery. He contacted the District Attorney and tried to get him to recommend probation for her. The District Attorney told him there was a possibility that she could get probation if she turned State's evidence and testified against the McDaneld brothers. Her attorney explained to the District Attorney that she could not testify for the State as she denied any knowledge of the robbery. The District Attorney stated the only way he would recommend probation would be in exchange for her testimony against the brothers.

Appellant's attorney contacted her again and related his conversation with the District Attorney but appellant again refused to testify against the McDaneld brothers, saying she did not have any knowledge of the robbery.

Appellant employed her attorney in April, 1975, before her trial the following June. Robert McDaneld employed appellant's attorney five days before her trial and the attorney disclosed this fact to appellant. The attorney had seen a signed statement by Robert McDaneld in which he confessed the robbery and he employed appellant's attorney to negotiate a plea for him, but when he learned that he was going to get twenty years, he decided to take his chances with a jury. He got thirty years.

It would have been far better if the attorney had not accepted Robert McDaneld's case even for the purpose of "plea bargaining." It is dangerous to represent two or more defendants charged with the same offense. In the course of events there is always the possibility that a conflict of interest may arise. Here the attorney could see no conflict of interest as appellant was to go to trial on a plea of not guilty and McDaneld was to initially plead guilty.

In order to successfully show ineffective representation by counsel appellant must show that the conduct of the attorney reduced the trial to a farce, sham, or mockery of justice. *Boswell v. State,* 290 Ala. 349, 276 So.2d 592; *Freeland v. State,* 43 Ala.App. 406, 191 So.2d 245; *Gore v. State,* 45 Ala.App. 146, 227 So.2d 432.

In *United States v. Wayman,* 510 F.2d 1020, the United States Court of Appeals, Fifth Circuit, said:

"The mere fact that an attorney jointly represents co-defendants is not, per se, a denial of effective assistance of counsel."

See *Horowitz v. Henderson,* 514 F.2d 740 (Fifth Circuit, 1975).

The trial judge saw and heard the witnesses on two separate occasions on the motion for a new trial. He was in a far better position to judge the credibility of the witnesses than we are and he denied the motion for a new trial.

Granting or refusing a motion for a new trial is a matter resting largely in the discretion of the trial court and the exercise of this discretion carries with it a presumption of correctness. *Johnson v. State,* 51 Ala.App. 172, 283 So.2d 624;

*Moore v. State,* 52 Ala.App. 179, 290 So.2d 246.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.

AFFIRMED.

TYSON, DeCARLO and BOOKOUT, JJ., concur.