HARRIS, Judge.
Appellant was convicted of robbery and sentenced to ten years in the penitentiary. At arraignment and trial appellant was represented by court-appointed counsel. He pleaded not guilty. After sentence was imposed, appellant gave notice of appeal. He was furnished a free transcript and trial counsel was appointed to represent him on appeal. Appellant’s counsel did not see fit to file a brief on appeal.
The evidence in this case is in sharp conflict. The evidence presented by the State shows an aggravated case of robbery was perpetuated upon the victim. Appellant and a co-indictee testified that no robbery was committed at all.
The Attorney General through his able Assistant Attorney General, Mr. Ward, has summarized the evidence in this case in his usual and expert manner and we here adopt the statement of facts set forth in his excellent brief.
The first witness for the State, the victim of the robbery, stated that he saw the appellant at the Lakeside Lounge in Bromp-ton, Alabama, around 9:00 at night on May 8,1976. The witness stated that Brompton, Alabama, was in St. Clair County, Alabama.
The witness stated that the appellant, along with a boy and a girl later identified to him as Charles Ray Owens and Marilyn Myrick, were already at the Lakeside Lounge when he arrived. He stated that the appellant asked him if he would give him a ride home to Prescott, Alabama. The witness stated that he told the appellant he would take him home. The witness continued by stating that after about 45 minutes he left the Lounge with the appellant, Charles Ray Owens, and Lois Myrick. He stated that they left the Lounge in his 1973 Chevrolet Monte Carlo with him driving. He stated that the appellant was in the front seat while Charles Ray Owens and Lois Myrick were in the back seat. He stated that his purpose in taking them in his car was to give them a ride to Prescott, Alabama.
The witness stated that while traveling towards Prescott, Alabama, his passengers told him to turn on Winnataska Road. He stated that he turned on this road and stopped. The witness stated that when he stopped he was beaten up and after he was beaten up, the passengers, with the appellant driving, drove him to Brashier Hill to Charles Ray Owens’ mother’s house. He stated that they got him out of the car and took him into Owens’ mother’s home. He stated while there Owens and his mother got into an argument and while they were arguing he ran away and went up to a neighbor’s house and called the police. The witness said that Winnataska Road is in the southern division of St. Clair County.
In a little more detail, the witness stated that when he stopped the car on the Winna-taska Road the Owens boy grabbed him from behind and then the appellant started hitting him. He stated that when they left Winnataska Road and drove to Brashier *33 Hill the appellant was driving the car. He stated the appellant drove the car a little further down Winnataska Road and they stopped again. He stated they asked him how much money he had and he told them he did not have any money. He stated they responded by telling him that he was lying and they kept on beating him.
The witness stated that he did not have any money but that he had a checkbook and a billfold with him. He stated that when he took out his billfold to show them that he didn’t have any money the Owens boy took it. He stated he also had a check for $20.00 which the Owens boy also took.
The witness stated that the value of the 1973 Chevrolet Monte Carlo was $3700.00. He stated the check was for $20.00. He finally stated that the aggregate or total value of the items taken from him was $3730.00.
The witness continued by stating that after they stopped and took his billfold and the $20.00 check on the Winnataska Road, they put a shirt on his head and drove him to Brashier Hill. The witness stated that when they got to Brashier Hill they took him out of the car and carried him inside of the house. He stated that he knew it was Brashier Hill because he had been there before.
He stated that he stayed inside the house for a few minutes and then ran and called the police. He stated that the house he ran from was Charles Ray Owens’ mother’s house. He stated that he ran to the next house up the road which was owned by Mamie Brashier. The witness stated that Mamie Brashier was there at the time and that she is the one who called the police for him. He stated she called Leeds Police Department who responded to the call by coming over to Mamie Brashier’s house and talking with him.
Additionally, the witness stated that after Mamie Brashier called the Leeds Police Department, he called them back to give them a description of his car. He stated that an Officer Harding from the Leeds Police Department came to Mamie Brash-ier’s house. He stated Officer Harding carried him to the Emergency Room at Leeds Clinic.
The witness stated the next time he saw the appellant was in the Leeds Jail the following Monday. The witness stated that the appellant was one of the people striking him on the Winnataska Road when they stopped the car. He stated that Owens was also hitting and striking him.
On cross-examination, Mr. McKelvey stated that he drank two or three beers while he was at the Lakeside Lounge. He also stated that the appellant, Owens, and the Myrick girl were drinking beer and whiskey; however, they did not seem like they were drunk.
Mr. McKelvey stated that the reason he initially stopped on the Winnataska Road was because the appellant and his friend stated that that is where they lived. He stated that he stopped the car in front of a house and after that they started beating him. The witness stated that the appellant and his friends did not have any weapons, that they just hit him with their hands. The witness stated that after being hit by the appellant and his friend he was bleeding.
He stated that both the appellant and Charles Ray Owens asked him if he had any money. He stated that the girl, Mrs. My-rick, did not ask him whether he had any money and did not participate in hitting him. The witness stated that when they took him to Charles Ray Owens’ mother’s house they forced him inside by walking on each side of him and holding his arms.
The witness stated that the $20.00 check was signed by him in the car. He stated that the appellant and his friends forced him to write the check when they discovered he had no money. The witness stated that he gave the check to Charles Ray Owens.
The witness continued by stating that when he ran from Owens’ mother’s house to the Brashier home that the appellant chased him.
On redirect examination, the witness stated that the appellant chased him all the *34 way from Owens’ mother’s house to the Brashier home. The witness stated that when he got near the Brashier home the appellant turned around and went back. Finally, the witness stated that he got his automobile back the following morning from the Leeds Police Department, that being a Sunday morning.
On recross-examination, the witness stated that the appellant chased him up to the Brashier home; that the appellant grabbed him at the Brashier home; and that after he grabbed him he let go and left.
James Harding testified that he was employed by the Leeds Police Department and was working in such capacity on May 8, 1976. He stated on that day he was working the three to eleven shift, that being the evening shift.
Officer Harding stated that on the evening of May 8, 1976, the Leeds Police Department received a call from Mrs. Brashier. He stated that the dispatcher told him that Mrs. Brashier called and said someone was outside her house yelling “Help. Help.” Officer Harding said that this call was received at five minutes after ten the night of May 8, 1976. He stated that after receiving the call he went to the Brashier home which is located in the southern division of St. Clair County.
Officer Harding stated that when he got to the Brashier home he saw Mr. McKelvey. Officer Harding stated that it appeared that Mr. McKelvey had been beaten about the head and that he was bloody. According to Officer Harding, Mr. McKelvey told him that he had picked up some people on the side of the road and they had beaten him up and taken his ear and money and left.
Officer Harding stated that he then transported Mr. McKelvey to the Leeds Emergency Room. He stated that when Mr. McKelvey made the complaint to him about the robbery he did not mention the appellant, Kenneth Ray Lee, by name, but rather used the nickname of Jap. Officer Harding stated that he knew the appellant by the nickname of Jap.
Further, Officer Harding stated that when Mr. McKelvey made the complaint to him about the robbery he also mentioned Charles Ray Owens and a woman.
Officer Harding stated that he saw the appellant, Owens, and the woman later that night at the Leeds Jail.
Additionally, Officer Harding stated that when he was en route to the Brashier home from the Leeds Police Department he received another call from the dispatcher saying that Mr. McKelvey had called to report that his car had been taken and had given a description of that car. Officer Harding stated that when he arrived at the Brashier home and talked with Mr. McKelvey, Mr. McKelvey verified that his car had been taken and also that his wallet and a check had been taken from him.
On cross-examination, Officer Harding stated that when he first saw Mr. McKelvey his eye was swollen and he was bleeding from his mouth and nose and he also had some small cuts on his face. Officer Harding stated that when he observed Mr. McKelvey at the Brashier home he was groggy. He explained this to mean that Mr. McKelvey was weaving on his feet; that he was standing up but that he was not standing steadily.
Richard Lee Smith testified that he was a patrolman with the Leeds Police Department and he was serving in such capacity on May 8,1976. He stated he was patroling with another officer, that being Officer Spradly, around 10:00 at night. He stated that around that time he received a stolen car report from Leeds Police Department radio dispatcher and from Officer Harding.
Patrolman Smith stated that the car stolen allegedly belonged to R. A. McKelvey, Jr. Patrolman Smith stated that he saw the stolen automobile belonging to R. A. McKelvey around ten minutes after ten on May 8, 1976, at the Raceway Service Station, that station being located on Highway 411 and 25 in Leeds, Alabama. Patrolman Smith said that the appellant, Kenneth Ray Lee, was driving the car when he saw it at the Raceway Service Station. Patrolman Smith identified appellant as the one driv *35 ing this automobile by pointing to him m the courtroom.
Patrolman Smith stated that Charles Ray Owens and Marilyn D. Dunnaway were also with the appellant when he saw the stolen automobile of R. A. McKelvey, Jr. He stated when he first saw the car it was stopped in front of the rest rooms at the service station; that Mrs. Dunnaway was getting out of the car and going into the ladies rest room; that the appellant was sitting under the steering wheel of the car and Owens was sitting on the passenger’s side next to the window. Patrolman Smith stated that when he saw them he arrested them.
Patrolman Smith stated that he had a description of the car the appellant and his friends were in. He stated the car was a 1973 Monte Carlo with a black vinyl top and a silver bottom. He stated that this automobile was later identified by Mr. McKelvey as being his car.
Additionally, Patrolman Smith stated that when he arrested appellant and his friends they found the billfold of Mr. McKelvey in the possession of Charles Ray Owens, it being in his hip pocket. Further, he stated that they found the check written out for $20.00 cash in the purse of Marilyn Dunnaway.
On cross-examination, Patrolman Smith stated that Mrs. Dunnaway also goes by the name of Marilyn Myrick. Patrolman Smith stated he had a conversation at the Raceway Station with the appellant after he read him his rights. He stated the appellant told him that he did not steal the car. Also, Patrolman Smith stated that Charles Ray Owens said that he did not steal the car and that Mrs. Dunnaway refused to make a statement at all.
Lois Myrick testified that her name was Lois Myrick, but that she was also known as Dunnaway. She stated that Dunnaway was her maiden name. She stated that she knew the appellant and that she knew him by the name of Jap. She stated that Jap was his nickname and that his real name was Kenneth Ray Lee. The witness stated that she was presently under indictment and charged with some crime. She stated that she was testifying in this case with the knowledge of her attorney.
The witness stated that she knew Charles Ray Owens and that on the night of May 8, 1976 she was at the Lakeside Lounge in Brompton, Alabama with Owens and the appellant, Kenneth Ray Lee. She stated that they arrived at the Lakeside Lounge around 5:00 for the purpose of doing some drinking and shooting pool. She stated they stayed there until about 10:00 or 10:30.
The witness stated that she had seen the victim of the robbery, Mr. McKelvey, the night of May 8, 1976 at the- Lakeside Lounge. She stated that Mr. McKelvey came in the Lounge some time after she, the appellant and Owens had arrived. She stated that they got to the Lakeside Lounge in Charles Ray Owens’ car but that it “tore up” on the way. She stated that by the time they arrived at the Lakeside Lounge the car was not in working order. She stated that she saw both the appellant and Charles Ray Owens talk to Mr. McKelvey that evening at the Lakeside Lounge. She stated that she did not hear what they said to him but that Charles Ray Owens told her to come on, Mr. McKelvey was going to carry them home. She stated that she went and got into the car with them and she was told, “Come on. He’s going to carry us home.”
She stated that when they got into the car the appellant got into the front seat and she and Owens got in the back seat. She stated they left Lakeside and headed towards Prescott, Alabama. She stated as they got somewhere near the vicinity of Prescott the appellant and Charles Ray Owens told Mr. McKelvey to stop, that they had a gun and that they wanted his money. The witness stated that although they told Mr. McKelvey that they had a gun, they really did not have one.
The witness stated that this took place on the Winnataska Road in St. Clair County, Alabama. The witness stated that when they stopped the appellant got under the steering wheel and put Mr. McKelvey in the. middle in the front seat. She stated that *36 Charles Ray Owens then got in the front seat on the passenger’s side. She stated that after the appellant and Charles Ray assumed these positions they began hitting Mr. McKelvey and asking him for his money. She stated that they told him they wanted whatever money he had.
She stated that Mr. McKelvey told them he didn’t have any money. She stated that the appellant and Owens took a billfold from Mr. McKelvey and also made him write out a check for $20.00. She stated that he wrote the check out to cash. She stated that he handed the check to Charles Ray who eventually gave it to her.
After McKelvey gave them the check, they drove around a little bit more. She stated that they again stopped and they began to hit Mr. McKelvey some more. She stated that after stopping and hitting him some more, they started to Leeds to cash the check and went to a Quik Mart for this purpose. She stated she went inside to cash the check but the people at the Quik Mart refused to cash it.
After attempting to cash the check, they then went to Charles Ray Owens’ parents’ home. She stated that when they got to the Owens home, Charles Ray told her to stay in the car. She stated that she got on the outside of the car to wait and eventually she heard someone hollering and then not too long after that she saw someone take off running.
Mrs. Myrick stated that on the way up to the Owens home the appellant and Charles Ray Owens put a shirt over Mr. McKelvey’s head. She stated that it was Mr. McKel-vey’s shirt that they put on over his head. The witness stated that when McKelvey ran out of the Owens house hollering for help he ran in the direction of Mamie Brashier’s home. She stated that the appellant was chasing him as he ran towards Mamie Bra-shier’s. She stated the appellant chased him almost all the way to Mamie Brashier’s house and then turned around and came back. She stated that when he came back he told them “he had lost him.”
She stated that after a few minutes they left the Owens home and stopped at a Raceway Service Station so that she could use the bathroom and the phone. She stated the Raceway Station was coming out of Leeds going towards the freeway. She stated that while they were stopped at the Raceway Station the Leeds police came and arrested them all and carried them to jail. Miss Myrick stated that when they got to the Police Station the police recovered the billfold out of Charles Ray Owens back pocket and the check out of her purse.
She stated that the car they were arrested in was the same automobile that they were in when they left the Lakeside Lounge. She described the car as a gray looking Monte Carlo.
Mrs. Myrick stated that when Mr. McKel-vey ran from the Owens home his face was all messed up and beat up pretty bad. She stated he was bleeding. Also, she stated that he was hollering for help, and, “for them to quit and leave him alone.”
On cross-examination, the witness stated that Charles Ray Owens and the appellant were pretty drunk when they left the Lakeside Lounge. However, she stated that Mr. McKelvey was not drunk. Further, she stated that she also was not drunk.
The witness was very insistent that the District Attorney had not promised her anything in return for her testimony in the instant case. The witness continued by stating that both the appellant and Charles Ray Owens told her that they were going to take the car somewhere and try to sell it. Further, the witness stated that Mr. Owens did not wrestle or forcibly take the billfold from Mr. McKelvey. Rather, she stated that Mr. McKelvey handed it to him.
On redirect examination, the witness stated that she did not talk to the District Attorney before he started examining her on the witness stand during the trial.
At this point, the State rested its case subject to calling rebuttal witnesses.
Also at this point, the appellant moved to have the Court dismiss the charges against him. This motion was overruled and denied by the St. Clair County Circuit Court.
*37 Charles Ray Owens testified on behalf of the appellant. Mr. Owens began by testifying that he lived on Brashier Hill in Leeds, Alabama. Owens stated that he knew Mr. McKelvey prior to the robbery on May 8, 1976. He stated that prior to this time Mr. McKelvey had come up to his house and they at times had dated sisters.
Owens stated that he had been living with Lois Myrick for approximately three or four months prior to the robbery on May 8, 1976. He stated he was not married to her but was presently married to someone else.
Owens stated that on the afternoon of May 8, 1976 he and Lois Myrick went to his uncle’s house where the appellant was staying. Owens stated that after picking up the appellant they went to the Lakeside Lounge arriving there at around 5:00 in the afternoon. He stated that as he was pulling in at the Lakeside Lounge he had car trouble serious enough to make it impossible for him to drive the automobile anymore.
Owens continued by stating he saw Mr. McKelvey at the Lakeside Lounge around 8:00 or 9:00 that same night. He stated he asked Mr. McKelvey if he would take them to their home up on Brashier Hill. According to Owens, McKelvey told them that he would take them up there after he finished drinking the beer he was drinking.
Some fifteen to twenty minutes later, Mr. McKelvey, Owens, the appellant and Lois Myrick left Lakeside Lounge in Mr. McKelvey’s automobile. According to Owens, McKelvey was driving, the appellant was in the front seat, and he and Lois Myrick were in the back seat. Owens stated that after leaving Lakeside Lounge they went first to the Raceway Service Station in Leeds to purchase some beer. Owens stated that while driving from the Lakeside Lounge to the Raceway Service Station, the four of them just carried on a conversation and talked. He stated that there was no discussion up to that time about any money.
He stated that they purchased a six pack of beer at the Raceway Service Station and then proceeded to his house on Brashier Hill. He stated he did not own this house on Brashier Hill but that he was renting the same. He stated that while they were driving from the Raceway Station to Bra-shier Hill he and McKelvey got into an argument. According to Owens, McKelvey asked Lois if she would go off with him. In response to this, Owens told him “to leave his girl friend alone.”
After arriving at Brashier Hill, the four of them went inside and drank a beer. Owens stated he momentarily left to go to the bathroom and when he returned he heard a conversation between McKelvey and Lois. According to Owens, Lois was telling McKelvey to leave her alone. Owens stated that when he walked in the room McKelvey just kept messing with Lois so he told him to leave her alone. According to Owens, McKelvey then asked him what business he had to do with her and Owens told him. After that conversation, a fight started.
Owens stated that he and McKelvey went outside to have the fight. Owens stated that before they started the fight both of them pulled their shirts off. He stated that they fought for a while and then McKelvey took off and ran down the road behind Owens house out another road towards another house. Owens stated that after McKelvey ran Owens picked up his shirt, put it in the house and then the three of them got into the car and went over to the Raceway Station to get some more beer.
Owens stated that once they got to the Raceway Station they were arrested. Owens stated he did not know anything about any twenty dollar check. Also, Owens stated that he was pretty full but not intoxicated.
Owens stated that when they stopped at the Raceway they were only going to get a six pack of beer and then return to his house. He stated that when he got out of the car to go inside the Raceway Station to get the beer the police officers pulled up and arrested him.
Kenneth Ray Lee, the appellant in this case, began his testimony by stating that on *38 May 8, 1976, he went to the Lakeside Lounge with Charles Ray Owens and Lois Myrick. He stated that on the way to the Lounge Owens’ car developed car trouble. However, he stated they were still able to make it to the Lounge.
The appellant stated that later that night at the Lakeside Lounge he saw Mr. McKel-vey. He stated he had never seen Mr. McKelvey before this time and did not know him. He stated he was never introduced to him but only later found out his name. The appellant stated that he had a nickname and that nickmane was Jap.
According to the appellant, Mr. McKel-vey, the appellant, Charles Ray Owens, and Lois Myrick left the Lakeside Lounge around 9:00. He stated that Mr. MóKelvey was going to take them to Charles Ray Owens’ house on Brashier Hill. Appellant stated that the first stop after leaving the Lounge was the Raceway Station in Leeds, Alabama. He stated the purpose of stopping there was to buy some beer. He stated that he got out of the car and purchased the beer. After buying the beer, the appellant stated they went up to Charles Ray Owens’ house on Brashier Hill. The appellant stated that while driving from the Raceway Station to Brashier Hill, Owens and Mr. McKelvey got into an argument over Lois Myrick. According to appellant, McKelvey asked Lois to go off with him and Charles Ray Owens told McKelvey to leave her alone.
The appellant stated that after arriving at Owens’ home on Brashier Hill they all drank a beer. The appellant stated that while Owens went to use the bathroom, McKelvey and Lois began to talk. When Owens returned, he and McKelvey got into an argument and began fighting. The appellant stated they went outside and started this fight.
According to appellant, Owens and McKelvey fought for a little while and then McKelvey broke loose and started running. Appellant stated that he did not chase him. He stated he was just there with Lois watching the fight. Appellant stated he did not participate in the fight, that on the night of May 8,1976 he never put his hands on nor did he strike McKelvey; that he never that night went on the Winnataska Road; that on that night he never robbed Mr. McKelvey of a twenty dollar check; that on that night he never robbed Mr. McKelvey of a billfold; and on that night he never robbed Mr. McKelvey of his automobile.
On cross-examination, the appellant admitted that he had previously been convicted of a felony.
At this point the defense rested its case.
Lois Myrick stated on State’s rebuttal that on the night of May 8,1976 when they left the Lakeside Lounge they went to Prescott and not directly to Brashier Hill. Further, she stated that at no time during the course of their trip did Mr. McKelvey ever make any suggestions of any nature to her of dating him, or going with him or having sex with him.
Additionally, she stated she did not see Charles Ray Owens and Mr. McKelvey strip down to the waist and have a fight out in the yard. Lois stated that on the night of May 8, 1976, she did not go inside the Owens house on Brashier Hill and that McKelvey never made any kind of proposition to her inside that house.
The essential elements of the crime of robbery are: (1) felonious intent, (2) force, or putting in fear as a means of effecting the intent, and (3) by that means of taking and carrying away of the property of another from his person or in his presence, all of these elements concurring in point of time. Cobern v. State, 273 Ala. 547, 142 So.2d 869; Tarver v. State, 53 Ala.App. 661, 303 So.2d 161; Johnson v. State, 57 Ala.App. 470, 329 So.2d 160.
Conflicting evidence in a robbery prosecution as to whether appellant committed the robbery presented an issue for the jury to resolve. Williams v. State, 26 Ala.App. 555, 163 So. 463; Cowart v. State, 22 Ala.App. 300, 115 So. 145; Lewis v. State, 55 Ala.App. 131, 313 So.2d 558; Mitchell v. State, 52 Ala.App. 174, 290 So.2d *39 241; Taylor v. State, 55 Ala.App. 184, 314 So.2d 104.
It is immaterial who takes the property where several persons participate in a robbery. Johnson v. State, supra; Murphy v. State, 52 Ala.App. 490, 294 So.2d 457; Gibson v. State, 49 Ala.App. 18, 268 So.2d 49.
In Stokley v. State, 254 Ala. 534, 49 So.2d 284, the Supreme Court held:
“When by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the other in the perpetration or commission of the offense, is a guilty participant, and in the eye of the law is equally guilty with the one who does the act.”
In reviewing the denial of a motion for a new trial, this Court will indulge every presumption in favor of the correctness of the ruling of the trial court. Clark v. State, 54 Ala.App. 217, 307 So.2d 28; Johnson v. State, 51 Ala.App. 172, 283 So.2d 624.
This case points up the plight of a modern day Samaritan who was trying to do a good deed and fell into the hands of thieves and robbers. After leaving the Lounge in his car with appellant and two others, McKelvey was forced to stop his car on a dark road in St. Clair County. There he was beaten by both appellant and Owens. His billfold was taken and he was forced to write a check for twenty dollars made out to cash. After being beaten and robbed he was carried inside a house occupied by one of his assailants with his shirt pulled over his head. He managed to escape and ran to a neighbor’s house for help with appellant in hot pursuit. The police were called and immediately responded. The police officer described the victim as bloody and badly beat up and the officer carried him to the emergency room of a hospital in Leeds, Alabama. Shortly thereafter the victim’s car was recovered in the possession of appellant and his companions at a service station. Appellant was in the driver’s seat. They were then and there arrested and each was given the Miranda rights and warnings.
The evidence presented at trial was more than sufficient to support the judgment of conviction, and this case is due to be affirmed.
AFFIRMED.
All the Judges concur.