Appellant was convicted of murder in the second degree of B.J. Turner and sentenced to imprisonment for fifteen years. His trial was on an indictment charging murder in the first degree.
The corpus delicti was thoroughly established by the testimony of Talladega County Sheriff Jerry Studdard and other witnesses to the effect that about 6:30 P.M. May 8, 1979, a search was begun for the victim as a reported missing person; his decomposed body was found about 2:00 the next morning about three-fourths of a mile off Talladega County Road No. 88 near a garbage dump; the victim's automobile was in the same vicinity; expert witnesses testified that the victim's death had been caused by "a cut throat or a sharp force wound to the neck." There is no issue between the parties as to the question of the sufficiency of the evidence to support the verdict. As stated by appellant:
 "The State's evidence tended to prove that on Sunday afternoon May 6, 1979, the victim's throat was cut by a pocket knife wielded by the defendant. The State's evidence included two written statements signed by the defendant, a tape recording, and an oral statement relative to a knife which was the alleged murder weapon."
Appellant further narrows the issues on appeal by stating:
 "The defendant's defense was based in the main on self-defense (RA 140-141). The defendant's evidence tended to prove that prior to Sunday May 6, 1979 that not only had the victim taken defendant's wife away from him but had given defendant ample reason to fear for his life. The victim had threatened defendant's life with a gun at a ball game at Oxford, Alabama (RA 133-135). On another occasion the victim had drawn a gun on the defendant (RA 144-145). Still another occasion the victim had kicked the door down at defendant's home (RA 143-145) and had in other ways and on other occasions spoken and acted in such ways as to cause defendant to fear for his life. Further the evidence for defendant tended to prove that on Sunday afternoon May 6, 1979, the victim had again approached defendant with verbal threats and with *Page 607 
one of his hands in his pocket as if reaching for a weapon such as a knife. These threats and actions caused the defendant to fear for his immediate bodily safety and life to such an extent that defendant swung at the victim with his pocket knife in an apparent necessity to protect himself. The victim, having been struck on the throat by the pocket knife, ran off into the woods while the defendant ran in fear in the opposite direction."
Appellant does not question the fact that the written statements signed by defendant and the tape recording of a dialogue between one of the investigating officers and defendant were preceded by plenary advice and warning as to his constitutional rights against self-incrimination and to an attorney at the expense of the State. His complaint is that the written statements and the recording failed to include some of the information that defendant had given his questioners that tended to support his defense of self-defense, particularly some statements by defendant as to some of the apparently hostile actions of the victim prior to the time of the fatal encounter.
Appellant's complaint is primarily addressed to two written statements, in the handwriting of the officer or investigator taking them and signed by defendant. These statements were introduced in evidence by defendant, as well as by the State. The record shows the following on cross-examination of the State's witness who had testified as to the recording and had played the tape thereof to the jury:
 "Q. Had you been present when some of the others had talked with him?
 "A. I was in and out of the office when Frank talked to him.
 "Q. Frank Strickland. Did you all get a signed statement from him on the same day at 11:30 P.M., didn't he start at 11:30 P.M.
 "RUMSEY: I have both of those statements. I will be glad to get the originals and offer them into evidence.
 "MR. LOVE: Please do. I'll mark them and offer them myself.
"MR. RUMSEY: I'll offer them in.
 "Q. Mark them as Defendant's 8 and 9. We offer Defendant's 8 and 9 into evidence. Take them please sir. Look at those handwritten statements and tell us who wrote those statements?
"A. Frank Strickland."
Thereupon defendant's counsel continued his cross-examination of the witness and in doing so quoted much of the statements made by defendant. When the particular witness finished his testimony, the State called another witness to the stand and interrogated him as to defendant's Exhibit 8, which chronologically was the second of the two written statements made by him and designated as Defendant's Exhibits 8 and 9. The following occurred out of the presence of the jury, immediately after the witness had taken the stand:
 "Q. I'll ask you if you are the Chief Investigator for the Talladega County Sheriff's Department?
 "Q. Frank, I'll show you Defendant's Exhibit No. 8 and ask you, can you identify that?
"A. Yes, sir.
"Q. What is that?
 "A. That is a statement from Mr. Smoot. This is the Miranda warning on the front.
 "Q. Now, did you advise the Defendant of his constitutional rights on that occasion?
"A. Yes.
"Q. When was that occasion?
"MR. LOVE: On this statement here?
"Q. Yes, sir.
 "MR. LOVE: I am not making an issue of that. I offered it myself.
 "Q. Do you stipulate as to those rights that they were given?
"MR. LOVE: Oh, yes, sir."
Appellant argues that the "use of written statements which selectively incorporate only that which helps the state to make out its case and which does not contain the defendant's entire statement is definitely erroneous and unfairly prejudices the rights of the defendant. It raises the Constitutional issue of whether the defendant was denied fundamental fairness. . . ." *Page 608 
Our review of the lengthy interrogation of witnesses by attorneys for both parties as to the contents of the oral statements made by defendant to the officers who interrogated him, as compared to the contents of the written statements signed by him and admitted in evidence, does not convince us that there was any intentional selection of "only that which helps the State to make out its case." Furthermore, appellant is in no position to complain of admission in evidence of the contents of written statements that he introduced in evidence. We observe also that, by thorough interrogation of witnesses on the point, defendant's counsel brought to the knowledge of the jury everything that defendant told his interviewers. He thereby vitalized the recognized right of a party in such a situation as the one presented here to prove an entire conversation between him and another if only a part thereof has been introduced in evidence by the other party.
There was no restriction whatever upon defendant's freedom on the trial to show everything said by defendant that constituted any part of any conversation between him and his interviewers that was omitted from either of the written statements signed by him. It would have been error for the trial court to have allowed the State to introduce in evidence the written statements of defendant without allowing the defendant to show "all that was said at the same time, on the same subject," as was held in Chambers v. State, 26 Ala. 59 (1855), and Parke v.State, 48 Ala. 266 (1872), relied upon by appellant, but no such action of the court occurred in the instant case.
Appellant also argues that his incriminating statements were vitiated by reason of his grossly substandard education, that he could not read and could not write well, that he had only had a third grade education. He says that another vitiating factor was that he was interrogated twice orally, once lengthily while the questions and answers were being recorded on tape, and that he signed two written statements, all during the same night between about 6:30 P.M. and about 3:00 A.M. There was no great insistence along this line on the trial. The evidence does not show that most of such time, that the greater part of such time, or that any extraordinarily large part of such time was devoted to interviewing the defendant. It does not show that he was in any subnormal physical condition, that he was suffering in any way or that there was any abusive treatment whatever of him. The evidence as a whole tended to show the contrary. The trial judge, as well as the jury, heard him as he replied to the questions recorded on the tape and played in open court. There was no evidence or any claim of any mental retardation. The record does not support appellant's contention that defendant did not understand his rights, that he did not make a free and voluntary waiver of his constitutional rights, or that he did not intelligently, knowingly and understandingly make the incriminating statements that were introduced in evidence. Elrod v. State, 281 Ala. 331,202 So.2d 539 (1967); Goldin v. State, 271 Ala. 678,127 So.2d 375 (1961); Twymon v. State, Ala.Cr.App., 358 So.2d 1072
(1978); Joshua v. State, Ala.Cr.App., 372 So.2d 885, cert. denied, 372 So.2d 891 (1979).
The only other contention of appellant is that a statement of defendant concerning his pocket knife, that it was the knife he used in cutting the victim's throat, should not have been admitted in evidence as it "had not been immediately preceded by the Miranda warning." Appellant continues this insistence by stating:
 When the final statement had been written by the interrogating officer and signed by the illiterate defendant the statement was deposited in the officer's folder and placed aside. After this the defendant and several officers drove across town to defendant's house. Some time after reaching his house, the defendant crawled under the house, retrieved his pocket knife and made a statement which was admitted into evidence at the trial. This statement was not prefaced by the Miranda warning. The last Miranda warning had occurred some time earlier back at jail (RA 91-100)." *Page 609 
Appellant's third contention proceeds on an assumption that an accused should be given a Miranda warning before each separate interrogation of him, even though it is established that such had been done on one or more previous interrogations and that the accused had clearly expressed a waiver; that a failure to repeat the Miranda warning before any such separate interrogation precludes the admission in evidence of an inculpatory response thereto by the accused. Such contention has been repeatedly rejected. Love v. State, Ala.Cr.App.,372 So.2d 414 (1979); Burlison v. State, Ala.Cr.App.,369 So.2d 844, cert. denied, 369 So.2d 854 (1979); Pope v. State, Ala.Cr.App., 367 So.2d 998 (1979); Jones v. State, 47 Ala. App. 568, 258 So.2d 910 (1972). In Gamble, McElroy's AlabamaEvidence, § 201.09 (1977), the author, in quoting from Jones v.State, says:
 "Perhaps the best statement of the rule was given by Mr. Justice Almon when he said: `Whether the Miranda
warning should be given before each interrogation must depend upon the circumstances of each case. The length of time and the events which occur between interrogations are relevant matters to consider.'"
According to the witness who testified as to defendant's statement at his home relative to the knife, he had "just advised him of the Miranda warning . . . probably thirty minutes before that." The record shows that while defendant was interrogated at the jail, he told his interrogators about the knife under his residence, promised to get the knife, and that promptly thereafter he returned with them to his residence, produced the knife he had been talking about and confirmed that it was the particular knife. There was no error in the admission of defendant's statement made at his residence relative to the knife, and defendant was not injured by his mere repetition of the statement that was already in evidence relative to the knife.
There is no error in the record prejudicial to the defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur. *Page 835